W. T. RAWLEIGH MEDICAL Co., Appellee, v. WM. H. OSBORNE et al., Appellants.

PLEADING: Matters Specially Pleaded—Illegality and Voida-
1 bility of Contract—Want of Consideration as Substitute. The *illegality* and *voidability* of a contract must be specially pleaded. A plea of want of consideration, with an allegation that the sale to defendant was "a violation of law," will not act as a substitute for such specific pleading. So *held* where defendant, under plea of failure of consideration, sought to introduce evidence to show that the contract sued upon (a) was contrary to public policy, (b) was contrary to the Federal Anti-Trust Law, and (c) was contrary to state statutes dealing with restraints of trade. (Sec. 3629, Code, 1897.)

CONTRACTS: Validity—Sales—Limitation on Selling Price, Terri-
2 tory, and Occupation. A contract for the sale of goods is not rendered violative of public policy, and therefore illegal and void-able, because of a clause therein providing (a) that vendee shall not sell any other goods, (b) that vendee will sell only at a price to be fixed by vendor, and (c) that vendee will pursue no other busi-ness, the contract providing for unlimited sales to vendee on credit, with installment payments measured by his receipts, with right in vendee, at any time, to wholly release himself from the contract by full payment of amount due.

*Appeal from Buena Vista District Court.—*N. J. LEE, Judge. .

THURSDAY, JUNE 29, 1916.

ACTION to recover the contract price of goods sold and delivered under a written contract. The answer was a general denial, with an admission, however, of the execution of the contract and of the receipt of the goods thereunder. The defendant also pleaded that the goods in question were purchased by the defendant for the purpose of resale to others; that such goods were worthless; and that their sale to the defendant was a fraud; and that their sale by the defendant to others would be a fraud. On the trial, the defendant admitted the receipt of the goods as pleaded in the petition, and admitted the contract price thereof. The defendant offered no testimony in support of the affirmative defense of failure of consideration. At the close of the trial, each party moved for a directed verdict. The motion of the plaintiff was sustained. From the judgment entered for the plaintiff, the defendant has appealed.—*Affirmed.*

*Bailie & Edson,* for appellants.

*Faville & Whitney,* for appellee.

EVANS, C. J.—The plaintiff set forth in his petition a copy of the contract sued on. Its execution was admitted by the defendant. As already indicated, the defendant pleaded a want or failure of consideration, but offered no evidence in support of such defense. The general contention now made by the defendant is that the contract sued on was illegal and void, as being contrary to public policy and contrary to the Federal statute known as the Anti-Trust Law, and contrary to those statutes of the state of Iowa which deal with restraints of trade. It is urged by the appellee that this contention and argument are not justified by the pleadings in the case. Such was also the view adopted by the trial court. The question, therefore, lies at the threshold of the case, and must receive our first considera-

1. PLEADING: matters specially pleaded: illegality and voidability of contract: want of consideration as substitute.

tion. The contract between the plaintiff and the principal defendant, Wm. H. Osborne, as set up in the petition, was as follows:

"Whereas Wm. H. Osborne, of Emmetsburg, Iowa, desires to purchase of The W. T. Rawleigh Medical Company of Freeport, Illinois, on credit and at wholesale prices to sell again to consumers, medicines, extracts, spices, soaps, toilet articles, perfumes, stock and poultry preparations and other goods, manufactured and put up by it, paying his account for such goods in installments as hereafter provided. Therefore, he hereby agrees to sell no other goods than those sold him by this company, to sell all such goods at regular retail prices to be indicated by it, and to have no other business or employment. He further agrees to pay said company for all goods purchased under this contract the current wholesale prices of such goods by remitting in cash each week to said company an amount equal to at least one half the receipts from his business until his account is balanced, and for that purpose, as evidence of good faith, he shall submit to said company weekly reports of his business; provided, however, if he pays his account in full on or before the tenth day of each month, he is to be allowed a discount of three per cent from current wholesale prices. Upon termination of this contract from any cause or by either party, he further agrees to settle in cash within a reasonable time the balance due said company on account. Unless prevented by strikes, fires, accidents, or causes beyond control, said company agrees to fill and deliver on board cars at place of shipment his reasonable orders, provided his account is in satisfactory condition, and to charge all goods shipped him under this contract to his account at current wholesale prices; also to notify him promptly of any change in wholesale or retail prices. Said company further agrees to furnish him, free of charge on board cars at place of shipment, a reasonable amount of first class advertising matter, report and order blanks, and printed return envelopes, for his use in conducting his business; also to give him free

of charge, after he has begun work, instructions and advice, through letters, bulletins, and booklets, as to the best methods of selling its products to customers. This contract is subject to acceptance at the home office of the company, and is to continue in force only so long as his account and the amount of his purchases are satisfactory to said company; provided, however, that said Wm. H. Osborne or his guarantors may be released from this contract at any time by payment in cash the balance due said company on account.

"Dated at Freeport, Illinois, November 17, 1909.

"The W. T. Rawleigh Medical Company.

"By W. T. Rawleigh, President.

"Wm. H. Osborne."

On the back of said contract appeared the following memoranda:

"1588. Contract with ——————; Name, Wm. H. Osborne. Received, Nov. 22, 1909. Inv. CMR Nov. 22, 1909. Approved by Karf. Accepted Dec. 2, 1909. Price List and Copy mailed Dec. 2, 1909. Territory Selected. State, Iowa. County, Dickinson. Selection recorded."

Manifestly, the foregoing contract does not, on its face, disclose any illegality. On the trial, however, the defendant introduced certain testimony consisting of certain letters and written instructions issued subsequently to the contract. Upon these, the defendant's contention is largely predicated, the theory being that they were a part of the contract, and that they indicated the construction of the contract which was put upon it by the plaintiff. These exhibits were received by the court over the objections of the plaintiff that they were irrelevant to any issue made by the pleadings, and were so received, subject to a motion to strike. We have to consider, therefore, whether this evidence was relevant to any issue tendered by the defendant's answer. For the plaintiff, it is contended that the question of the illegality of the contract was not made in the answer at all, except on the ground of failure of consideration. On the other hand, the defendant

contends that he pleaded the illegality of the contract in his amendment to his answer. The amendment in full, so relied on by the defendant, was as follows:

"Further answering, the defendants state that the drugs and nostrums, goods and merchandise, for which the plaintiff seeks to charge the defendants, including liniments, anti-pain oil, Golden Cough Syrup, Cough Balsam, Ru-Moxol, Cod Liver Oil, Extract, Tonic Laxative, Application and Gall Remedy, Female Tonic, Balm Vitus, extracts and flavors, Pain Expeller, toilet articles, spices, pills, salves, Healing Powder, dips and disinfectants, louse killers, condition powders and stock foods were and are worthless and of no value and wholly useless for the purpose for which the plaintiff offered them for sale and sold them to the defendant Osborne; that they were offered for sale to the defendant Osborne by the plaintiff with the intention on the part of the plaintiff and the said defendant to sell them to others; that such sale and the sale thereof to others would constitute a fraud upon the defendants and to the person purchasing the same; that the said goods and merchandise contained no curative or valuable qualities, and the pretended sale thereof by the plaintiff to the defendant Osborne was a violation of law, and by reason of the foregoing the defendant has been damaged in a sum equal and in excess to the claim made by the plaintiff in this suit. Wherefore the defendants pray that the plaintiff's cause of action may be dismissed and the defendants have judgment for costs."

We think it quite clear that this amendment furnished no basis for the introduction of the evidence in question, nor for the contention in argument now urged by the defendant. The case presented, therefore, is one where no illegality appears on the face of the contract sued on, and none appeared in the evidence introduced on behalf of the plaintiff. If we assume, therefore, that the evidence thus introduced by the defendant tended to show the illegality and voidability of the contract as a violation of law, it was clearly incumbent

upon the defendant to plead such illegality as a basis for such evidence.

Indeed, if we were to ignore the question of pleading and were to give full consideration to the evidence of the defendant, we are not favorably impressed with the legal merits of the argument of illegality. The emphasis of this argument is laid upon the fact that the defendant agreed to sell the goods at retail prices to be indicated by the plaintiff, and that the territory of the defendant was to be limited to Dickinson County, and that the defendant was to devote his time and attention exclusively to the sale of plaintiff's goods. The argument is that, inasmuch as the plaintiff had sold the goods to the defendant, it had no further lawful interest in fixing the retail price or the territory where resale should be made. Without going into the greater depths of this question, it is enough for the purpose of this case to note that the plaintiff was undertaking to sell to the defendant an unlimited quantity of goods, and it was extending credit therefor; that the amount of the respective installments to be paid was to be measured in each case by an aliquot part of the sales made during the previous period. The provisions thus emphasized fairly tended to operate as security for the payment of the purchase price. The final clause in the contract provided, in express terms:

2. CONTRACTS: validity: sales: limitation on selling price, territory and occupation.

"That said Wm. H. Osborne or his guarantors may be released from this contract at any time by payment in cash of the balance due said company on account."

We reach the conclusion, therefore, that the trial court properly held that there was no basis in the pleadings for the present contention of illegality. The judgment below must, therefore, be—*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.