CONWAY BROTHERS, Appellee, v. IOWA HARDWARE MUTUAL INSURANCE ASSOCIATION, Appellant.

PLEADING: Matters Specially Pleadable—Cancellation. A naked denial that a policy of insurance was in force at the time of loss does not raise the issue of *cancellation*.

INSURANCE: Cancellation—Mutual Policy—Actual Delivery. Actual delivery to the insurer of a *mutual* fire insurance policy is a condition precedent to the cancellation of the policy, such being the requirement of Sec. 1759-m, Code Supp., 1913, and of the policy in question. So held where the policy was returned by mail for cancellation, but reached the insurer *after* the fire loss.

*Appeal from Adams District Court.*—P. C. WINTER, Judge.

.MARCH 10, 1921.

ACTION to recover loss on a fire insurance policy issued by the defendant company. Verdict of jury, finding for plaintiff. Judgment entered thereon in favor of plaintiff in the sum of $2,877.34, with interest and costs. Defendant appeals.—*Affirmed.*

*A. Ray Maxwell* and *Smith & Rinard,* for appellant.

*Meyerhoff & Gibson,* for appellee.

DE GRAFF, J.—The petition alleged that defendant executed its written contract of insurance, covering a certain stock of merchandise owned by the plaintiff and kept in the town of Nodaway, Iowa; that, on the 27th day of January, 1919, while said policy of insurance was in full force and effect, the insured property was destroyed by fire; that, after the loss, and within the time and manner provided under the terms of said policy, plaintiff filed with defendant due proof of loss; that defendant failed and refused to settle and adjust said claim, for which plaintiff asked judgment. Defendant by its answer admitted the execution and delivery of the policy of insurance; admitted the filing of the proofs of loss; admitted that the policy covered the stock of merchandise described in the petition; but denied "that said policy of insurance was in force on the 27th day of January, 1919, or that the plaintiff suffered any loss of its property by fire at any time while said policy of insurance written by defendant was in force."

Plaintiff, Conway Brothers, is a copartnership, and conducted an implement and hardware business in the town of Nodaway, Iowa. On March 1, 1918, the policy of insurance in question (No. 38013) was issued for one year by the defendant company to the plaintiff herein. On the 27th day of January, 1919, between the hours of 8:30 and 10 o'clock in the forenoon, the building occupied by plaintiff was destroyed by fire, including the insured merchandise contained therein. It was stipulated, prior to the trial, that, in the event plaintiff was entitled

to recover on the policy, the sum of $2,877.34 was recoverable. It is contended by defendant company that, by reason of certain correspondence and transactions between the parties prior to the date of the fire, the policy was canceled. Plaintiff, on January 23, 1919, believing that he had sold his place of business,— which sale was not, in fact, consummated,—wrote to the defendant company the following letter:

"Having sold our place at Nodaway, and party there does not wish to take up the insurance, we wish to cancel policies numbered 38013, 36809, 38788 and 38090, which policies we have here at Corning, so please send cancellation and balance due on same, together with the premiums, here."

On January 24, 1919, the defendant company replied as follows:

"Replying to yours dated January 3d, received here January 23d, regarding cancellation of policies, would say that these should be sent to the office, as we cannot cancel them outside of the office. On receipt of same will cancel and return with unearned premium. Awaiting your papers, we are, Very truly yours."

On January 25, 1918, the plaintiff, in reply thereto, wrote the defendant the following:

"In reply to your letter of 1-24th, we are sending you by registered mail policies 38788, 39090, 37370 and 38013 for cancellation."

Plaintiff's reply to defendant's communication was registered in the post office at Corning, Iowa, on the 25th day of January, 1919, and was received at the Mason City post office some time on Sunday, the 26th day of January, 1919, but was not delivered until the morning of the 27th. The registered package containing the policies returned for cancellation was receipted for by the registry clerk at 7 o'clock A. M. on the 27th; but, the registry window not being open until 9 o'clock, the clerk put a notice in the post-office box of defendant, to the effect that a registered package awaited delivery. The secretary of the defendant company received this notice at 7:30 o'clock that morning. Sometime between 9 o'clock and 10:00 o'clock A. M., the secretary received the registered letter and took the same to the office of the defendant company, placing it on the desk of the

chief clerk for attention. Shortly after the receipt of same, the clerk computed the number of days the policy had been in force and the unearned premium for that time, to ascertain the amount of refund due the plaintiff. The clerk did not remember the time of day when this was done, but it was done some time before the close of the day. About 10 o'clock on the morning of the fire (January 27th), the secretary of the company received a telephone call from one of the Conway Brothers, making inquiry if the policy in question had been canceled, and asking if the policy could not be reinstated, to which the secretary replied that he could not do so. No mention was made in this conversation of any fire, and the first knowledge that the secretary had of any loss by fire was upon the receipt of a telegram, the following day.

It further appears that the postmaster at Mason City, between 1 and 1:30 on the afternoon of the day of the fire, received a telegram from the postmaster at Corning, requesting the return of the registered letter, to which he replied by telegram that the letter had been delivered at 10 o'clock A. M. of that day.

On January 28th, the defendant company sent a letter to the plaintiff, inclosing a check for $64.16, which included $17.12 for refund on the policy. This check was returned to the company by the plaintiff, with a letter of explanation.

It was clearly the intent of the insured to cancel the policies in question, and there is but one question of law to be determined on this appeal: Was the policy in suit in force at the time the property covered thereby was destroyed? There is no material dispute as to the facts.

I. *Is the issue of cancellation raised by the pleadings herein?*

Plaintiff averred in the petition that the policy was in force at the time of the loss, and that the conditions precedent for a recovery thereon had been performed by the insured. Defendant, in answer, denied that the policy was in force, and nothing more. This, in substance, is a general denial. Did it raise the issue of cancellation? It must be conceded that cancellation is an affirmative defense.

1. PLEADING: matters specially pleadable: cancellation.

Code Section 3629 provides:

"Any defense showing that a contract, written or oral, or any instrument sued on, is void or voidable; or that the instrument was delivered to a person as an escrow, or showing matter of justification, excuse, discharge or release, and any defense which admits the facts of the adverse pleading, but by some other matter seeks to avoid their legal effect, must be specially pleaded."

Cancellation of an insurance policy as a defense involves the discharge of the instrument and a release from liability thereon. It avoids the legal effect of the policy. The material facts of the case were admitted and are not in dispute; and, unless some special matter is pleaded that did discharge the instrument and the legal liability thereon, the trial court could properly have directed a verdict in favor of the plaintiff. The cancellation of a contract must be specially pleaded as a defense.

To allege in an answer that plaintiff's claim is illegal, unenforcible, against public policy, or fraudulent, is the pleading of a legal conclusion. The plea of illegality constitutes no defense, within the meaning of our statute on the subject of pleadings. *In re Estate of Rule,* 178 Iowa 184. Petition or answer must allege facts upon which the pleader relies, and not legal conclusions which he draws from facts not stated. It is said in *Marine Ins. Co. v. Hodgson,* 6 Cr. (U. S.) *206 (3 L. Ed. 200):

"However desirable it may be, to admit in evidence, on the general issue, in an action of covenant on a policy of insurance, everything which may avoid the contract, or lessen the damages, as is done in actions on the case, this court does not know that it possesses the power of changing the law of pleading, or to admit of evidence inconsistent with the forms which it has prescribed."

See, also, *Kelly v. Stone,* 94 Iowa 316; *Rawleigh Med. Co. v. Osborne,* 177 Iowa 208; *Davis v. Anchor Mut. F. Ins. Co.,* 96 Iowa 70; *Hart v. National Mas. Acc. Ins. Co.,* 105 Iowa 717.

The trial court could have correctly sustained plaintiff's motion for a directed verdict, on the evidence and issues made. This being true, subsequent errors in the record, if any, are not prejudicial and reversible.

II.    *Was the policy in suit in force at the time the property covered thereby was destroyed?*

It may be unnecessary to determine this proposition on this appeal; but, the question being somewhat novel in its character, the writer feels justified in making answer, even if, in so doing, a private rule to reduce all opinions to as few words as possible is violated.

2. INSURANCE: cancellation: mutual policy: actual delivery.

This case is governed by Section 1759-m, Chapter 5 of Title IX of the Code Supplement, 1913, which has in contemplation the matter of cancellation of policies issued by mutual companies. *Corey v. Sherman,* 96 Iowa 114.

The defendant company is a mutual fire insurance company, and not a stock company. Section 1745 is a part of Chapter 4 of Title IX of the Code, and governs stock companies. There is a very clear distinction in the law applicable to cases arising under the provisions of the foregoing chapters, respectively.

It may be conceded that, when a statute provides for cancellation of a policy upon request, or the provisions of the policy not in contravention of the statute contain a similar provision, a policy may be canceled upon request. The following cases are in harmony with this proposition: *Parsons v. Northwestern Nat. Ins. Co.,* 133 Iowa 532; *Crown Point Iron Co. v. Aetna Ins. Co.,* 127 N. Y. 608 (14 L. R. A. 147) ; *Gately-Haire Co. v. Niagara F. Ins. Co.,* 221 N. Y. 162; *Insurance Commissioner v. People's F. Ins. Co.,* 68 N. H. 51 (44 Atl. 82) ; *Roberta Mfg. Co. v. Royal Exch. Assur. Co.,* 161 N. C. 88 (76 S. E. 865) ; *Ohio F. Ins. Co. v. Hunter,* 38 Ind. App. 11 (77 N. E. 951).

Section 1759-m, Code Supplement, 1913, provides:

''Any policy of insurance issued by any association operating under the provisions of this chapter may be canceled by the association giving five days' written notice thereof to the insured, or if the insured shall demand in writing or in person, of the association, the cancellation of his policy, the association shall immediately advise him, by letter to address named, the amount, if any, due, as his pro rata share of losses and expenses incurred since date of his policy. Upon surrender of his policy and payment of all sums due, his membership shall cease, provided, that during the months of June, July and August, hail insurance policies may be canceled only at the option of the officers of the association carrying the risk.''

Article XI of the articles of incorporation of the defendant company provides:

"Members may withdraw from the association by returning their policies or certificates of insurance, if there is no loss pending and all their assessments are paid. If a loss has occurred prior to the notice of withdrawal, he must pay his pro rata share of any assessment necessary to meet such loss before the withdrawal takes effect. Upon withdrawal of a member all liability to assessments or otherwise ceases."

A proper construction of the statute and article quoted requires a delivery of the policy to the company as a condition precedent to cancellation. Upon surrender of his policy and payment of all sums due, his *membership shall cease*. This was the thought that was in the mind of the secretary of the company when he wrote the insured the letter bearing the date of January 24th. The policy in question might have been returned by the plaintiff in person or by messenger. He did neither, but selected the United States mail as his agent. It was the means he adopted to secure his actual surrender of the policy, and the policy must necessarily be received by the company through the agency adopted. See *Crown Point Iron Co. v. Aetna Ins. Co.*, supra. Had the plaintiff selected a messenger to go to Mason City to deliver the policy for the purpose of cancellation, it could not be said that the policy was surrendered until the messenger actually delivered it to the company.

In *Schroeder v. Farmers' Mut. F. Ins. Co.*, 87 Mich. 310 (49 N. W. 536), the court held that the actual surrender of the policy was essential to a withdrawal from membership. See, also, *Manitoba F. M. H. Ins. Co. v. Fisher*, 14 Manitoba 157; *Burmood v. Farmers Union Ins. Co.*, 42 Neb. 598 (60 N. W. 905); *National Union Ins. Co. v. Akin*, (Tex. Civ. App.) 160 S. W. 669.

The contract of insurance in question is a mutual one, and cannot be rescinded or canceled at the pleasure or caprice of either party thereto. The terms of the contract must be complied with, in order to effect a cancellation.

Were the conditions of the contract in any sense waived by the parties thereto by reason of the correspondence had between the parties prior to the fire loss?

Conditions of a policy may be waived. *Nelson v. Farm Prop. Mut. Ins. Assn.*, 127 Iowa 603.

The first letter written by plaintiff was a request for cancellation. The answer thereto contained the statement, "On receipt of policies, will cancel." The plaintiff attempted to comply, and sent the policies, as directed. An offer that expressly limits the time that a contract shall take effect, governs in the acceptance thereof. In this instance, it took effect from the time of the receipt of the policy, and not at the time of mailing. *Lewis v. Browning*, 130 Mass. 173; *Haas v. Myers*, 111 Ill. 421 (53 Am. Rep. 634). The offer of the defendant company was to cancel certain policies of insurance upon their receipt in its office. There is no dispute in the record as to the time of receipt of the policy. It was subsequent to the fire loss.

The trial court instructed that it did not require any stamp, physical mutilation, or mark on the policy to effect its cancellation, but that it would, in law, be canceled when the envelope containing the policy was opened in the home office of the defendant. In other words, the policy must actually come into the hands of the company for the purpose of cancellation. This is a compliance with the statutory provision, with the provision of the article of incorporation, and with the agreement, if such there was, as shown by the correspondence of the parties. The defendant company, having prescribed a certain method of cancellation, in conformity to statutory rule, is in no position at this time to complain.

The judgment entered by the trial court is—*Affirmed*.

EVANS, C. J., WEAVER, PRESTON, and ARTHUR, JJ., concur.