LEN HEMMINGS, Appellee, v. HOME MUTUAL INSURANCE ASSOCIATION OF IOWA, Appellant.

EVIDENCE: Production—Unauthorized Order—Effect. An order for the production of both material and immaterial documents is, of course, erroneous; but the error is harmless when the documents are produced, and there is no showing that any improper use was made of those documents the production of which was improperly ordered.

INSURANCE: Contract in General—Failure to Attach Copy of Application. Failure of an insurer to attach to a policy a true copy of an application for insurance in so far as it contained representations

relative to incumbrances on the property precludes the insurer from proving what the insured said relative to incumbrances when the application was made.

INSURANCE: Incumbrance—Exclusion of Evidence Tending to Show
3  Incumbrance—Harmless Error. The exclusion of evidence tending to show that a policy of insurance was wholly invalidated by the subsequent execution by the insured of a mortgage on the property without the consent of the insurer becomes inconsequential when the record conclusively shows that the insurer *waived said invalidating act.*

INSURANCE: Waiver—Invalidating Mortgage—Offer to Pay—Effect.
4  Conceding, *arguendo*, that the act of an insured in executing, subsequent to the date of a policy, and without the consent of the insurer, a mortgage on *part* of the insured property would invalidate the entire policy, even though the property lost was not covered by said mortgage, yet such invalidating act is wholly waived by the act of the insurer in offering, after the loss, and with full knowledge of said mortgage, to pay the loss on all property *not covered by said mortgage.*

INSURANCE: Incumbrance—Waiver by Adjustment of Loss. The
5  right to insist on the invalidation of a policy because of the existence of a mortgage on the property, antedating the policy and unknown to the insurer when the policy was executed, is wholly waived by the acts of the insurer, after the loss, and with then knowledge of said mortgage, (1) in making out proofs of loss and causing the same to be executed, (2) in adjusting the loss, and (3) in promising prompt payment.

INSURANCE: Waiver—Waiver Nonretractable. A waiver, though
6  without consideration, may not be retracted.

INSURANCE: Waiver—Waiver Per Se. The question of waiver is for
7  the court when the evidence is undisputed and unequivocal.

Headnote 1: 22 C. J. p. 963. Headnote 2: 26 C. J. p. 80. Headnote 3: 4 C. J. p. 1019; 33 C. J. p. 117. Headnote 4: 26 C. J. p. 335. Headnote 5: 26 C. J. p. 290. Headnote 6: 26 C. J. p. 285. Headnote 7: 33 C. J. p. 138.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

MAY 12, 1925.

ACTION upon a contract of fire insurance. From a judgment upon a verdict in favor of plaintiff, the defendant appeals.— *Affirmed.*

*Ray A. Emmert* and *Dayton & Eaton,* for appellant.

*William S. Hart* and *J. W. Dempsey,* for appellee.

VERMILION, J.—The claim of the plaintiff and appellee is to recover upon a policy of insurance issued by the appellant company, for the loss by fire of 12 head of cattle and 18 tons of hay.

The issuance of the policy and the fact of the loss were admitted. The defense is based upon the claim that, at the time the policy was issued, the property insured was mortgaged, which fact was concealed by the appellee, and that, after the issuance of the policy, the property was further incumbered by a mortgage, without the consent of the company, all in violation of the terms of the policy. These defenses are met by a plea of waiver.

1. EVIDENCE: production: unauthorized order: effect.

The material facts are not in dispute. The court did not submit to the jury the pleaded defenses or the question of waiver, and submitted only the questions of the amount and value of the property destroyed.

I.   Error is assigned on an order, made on application of the appellee before the trial, requiring appellant to produce "all original papers, files, and records of defendant, and in defendant's office, constituting a part or having directly to do with the insurance contract," and "all correspondence at all times since July 1, 1920 [a date prior to the issuance of the policy], between plaintiff and defendant and between defendant and other persons or parties whomsoever, except its own attorneys, with reference to plaintiff's insurance contract and plaintiff's fire loss, and the claim or proofs of loss made by plaintiff, and with reference to all transactions of all kinds between plaintiff and defendant subsequent to date of fire in question."

It must be conceded, we think, that the order was much too broad and general in its scope, and that the petition upon which it was granted was lacking in respect to the statement of what appellee expected to prove by the documents called for. Sections 4654 and 4655, Code of 1897 (Sections 11316 and 11317, Code of 1924); *Grand Lodge A. O. U. W. v. Webster County Dist. Court,* 150 Iowa 398; *Davis v. District Court,* 195 Iowa 688. Appellant was required to and did produce documents not mate-

rial to any issue presented, as well as others, such as the original application, the proof of loss, and certain letters and copies of letters written by the parties, that were material and competent, and which were put in evidence. But the error, as the matter is now presented, was without prejudice. No complaint is made that any of the documents so produced were improperly introduced in evidence, or that any improper use was made of them. In so far as the order was erroneous, or beyond the authority of the court, in requiring the production of documents appellant should not have been required to produce, it had no effect to bring about the result reached in the case. Furthermore, such documents as were improperly required were produced, and, we assume, inspected by the appellee. The mischief has been done, and a reversal on that account and a new trial would not undo it. In the absence of a showing of some improper use of the documents erroneously ordered to be produced, and one which could be corrected on a retrial, a reversal would be of no avail to protect any rights of the appellant's that may have been violated by the order.

II. Error is assigned on the refusal of the court to permit the agent who took the application for the policy to testify to what was said by the insured at that time with respect to incumbrances on the property. It appears without dispute that a true copy of the application for the insurance was not attached to, or indorsed on, the policy. From the application, as incorporated in the policy, it appeared that the question or requirement of the printed application, "State incumbrance, if any," was not answered by the insured; while in the original application, produced by the appellant in response to the rule to produce papers, the word "none" appeared as an answer to the question. Section 1741, Code of 1897 (Sections 8974 and 8975, Code of 1924), after requiring a true copy of the application, where made a part of the policy, to be attached or indorsed on the policy, provides that, if any company neglects to comply therewith, it shall forever be precluded from pleading, alleging, or proving any such application or representations or the falsity thereof. The result of the failure of the company to set out a true copy of the application in the policy was to deprive it of

2. INSURANCE: contract in general: failure to attach copy of application.

any right to prove the oral or written representations made in the application for the insurance. *Kirkpatrick v. London Guar. & Acc. Co.*, 139 Iowa 370. It was not error to refuse to receive the testimony of the agent who procured the application as to what representations the assured then made as to incumbrances on the property.

Appellant relies upon *MacKinnon & Co. v. Mutual F. Ins. Co.*, 89 Iowa 170, and *Kirkpatrick v. London Guar. & Acc. Co.*, supra, to support its contention that, notwithstanding the failure to attach a true copy of the application to the policy, it was entitled to show a breach of the conditions of the policy itself, or that the insurance was issued in violation of its by-laws, by which appellee agreed to be bound.

Even if the fact be passed that neither policy nor by-laws appear to contain any prohibition against the insuring of incumbered property, save a provision that any untrue answers in the application, with a view to creating an erroneous impression as to the condition and value of the property to be insured, shall render the policy void, the defense that the property was incumbered at the time the policy was issued was, as will be seen, waived by the adjustment of the loss, with knowledge of the facts.

III. It is said that the court erred in excluding evidence of a mortgage upon the insured property executed after the policy was issued.

The provisions of the policy with respect to the insurance on live stock were that the company insured the applicant:

"On 5 head of horses or mules on premises or in line of duty, not to exceed $150 each, $500. One half of the number kept must be insured. * * * On 25 head of cattle on premises or in pasture, not to exceed $100 each, $2,500. One half of the number kept must be insured."

The animals destroyed in the fire were milk cows. The property described in the mortgage in question was five horses, and five calves six months old. It is apparent that none of the ani-

3. INSURANCE:
incumbrance:
exclusion of evi-
dence tending
to show incum-
brance: harmless
error.

mals which were destroyed by the fire, and for which claim is made, were covered by this mortgage. It is the contention of appellant, however, that the contract of insurance was indivisible, and that the placing of an incumbrance on any of the insured cattle, without the consent of the insurer, rendered the entire contract void, or void as to all cattle insured. This question, for reasons which will presently appear, we do not find it necessary to determine.

Complaint is also made of the refusal of the court to admit in evidence the whole of a letter written by the secretary of the company to appellee's attorneys.

It is undisputed that, after the loss, the appellant sent an adjuster, who was one of its directors, to investigate the claim. He learned of two mortgages, executed before the insurance was written, that, it was claimed, covered a portion of the property insured. With this knowledge, he made out a proof of loss, which appellee signed, and agreed that the amount of the loss as stated therein should be paid within a few days. The secretary of the company wrote appellee, acknowledging receipt of the proof of loss, stating that there were two prior mortgages on the property, and saying further:

"We understand that the hay was not incumbered and, of course, we accept the proof so far as that is concerned but, we, of course, are compelled to follow our policy and by-laws, and, of course, will not admit any liability on any cattle that was lost that was covered by mortgage. But if you can file a sworn statement showing what cows, if any, that was lost was not covered by the mortgage, we would be glad to take care of them in the near future as we will take care of the amount of hay, provided, of course, that there was no incumbrance on the hay."

Thereafter, the secretary wrote another letter,—the one in question. The portion of the latter letter excluded was to the effect that the appellant had, since writing the first letter, learned of the mortgage given subsequent to the issuance of the policy. The following portion of the second letter was received in evidence without objection:

"We have tried to make this plain and in full, and as I said in our former letter, if there is any stock burned that was not

incumbered or mortgaged, we would be glad to admit liability on them the same as on the hay which you say was not incumbered.''

If it must be said that, had the mortgage and the whole of the second letter been admitted, there was a waiver of the provisions of the policy and the by-laws rendering the policy void if any of the property insured was subsequently incumbered without the consent of the company, no prejudice resulted from the exclusion of the offered evidence.

It is true that, at the time the proof of the subsequent mortgage was offered, no waiver had then been established; and, if appellant's theory that the contract was indivisible, and that an incumbrance on any of the insured property invalidated the policy as to the unincumbered property, be correct, the mortgage should then have been admitted; but if it now appears that, in any view of the question, the appellant waived any forfeiture of the contract on this ground, any error in the ruling was without prejudice. It is also to be said, that, while there is some claim that the adjuster, at the time he procured appellee to sign proofs of loss and agreed to pay the amount called for thereby, had knowledge of the subsequent mortgage, the conclusive proof of the company's knowledge of that mortgage is found in the part of the second letter excluded. But neither of these situations can avail appellant to secure a reversal, where it is clear that, had both the items of evidence been admitted, the result must have been the same. If everything claimed by appellant at this point should be conceded,—both its right to introduce in evidence the subsequent mortgage, and the legal effect thereof, and its right to introduce the whole of the letter,—but it would then, with these documents in evidence, have conclusively appeared that any provisions of the policy or by-laws upon which it could ground a contention that the subsequent mortgage given without its consent invalidated the policy had, with knowledge of the mortgage, been waived, the appellee would still have been entitled to recover. If, with the rejected evidence in the record, no different result could, in any event, have been reached, a new trial on that ground could avail appellant nothing. That we will not reverse for an error that could not have changed the result, and where, considering the excluded

evidence as in the record, the same result must have been reached, is well settled. *Kuhl v. Chamberlain,* 140 Iowa 546; *Gearhart v. Stouder,* 161 Iowa 644; *Watrous v. Watrous,* 180 Iowa 884; *Wonderly v. Oertel,* 185 Iowa 503.

IV. This brings us to the question of waiver. For the reasons stated, this question, so far as it related to the subsequent mortgage, is to be considered as if that mortgage and the second letter of the secretary were in evidence. And again, we may assume—without, however, so deciding—that the insurance contract was indivisible, and that a subsequent incumbrance of any of the cattle insured would invalidate the insurance as to cattle not so incumbered. It would appear, then, that the company, through its secretary, with knowledge of the subsequent mortgage, expressly stated that it would admit liability for any animals destroyed that were not incumbered. Waiver is defined as an intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. *Currie v. Continental Cas. Co.,* 147 Iowa 281. The element of prejudice to the party in whose favor the waiver operates is not essential, as in the case of estoppel. *Schuetz v. International Harv. Co.,* 167 Iowa 634.

4. INSURANCE: waiver: invalidating mortgage: offer to pay: effect.

It would be difficult to frame language more pertinent to convey the intention to admit liability for the loss of all animals covered by the insurance contract and not actually incumbered, than that employed by the secretary of the company in this case. That the language was used with reference to the subsequent mortgage is plain from the fact of its repetition in the second letter, and following the statement that the company had knowledge of the subsequent mortgage. We think it is not open to question that the company waived any provision of its policy or its by-laws, which were made a part of the policy, that would release it from liability if any of the insured property aside from that destroyed, was incumbered without its consent.

With respect to the forfeiture of the policy by reason of the mortgage existing at the time the policy was written, the situation is no less plain. It is shown without any dispute what-

5. INSURANCE: in-
cumbrance:
waiver by ad-
justment of loss.

ever that the adjuster, with knowledge of the mortgages, adjusted the loss, made out proofs of loss, which he had appellee sign, and promised that the amount agreed upon would be paid in a few days. This was a waiver of any claimed provisions of the policy or by-laws invalidating the policy if the property was incumbered at the time the policy was issued. *Brown v. State Ins. Co.*, 74 Iowa 428; *Lake v. Farmers' Ins. Co.*, 110 Iowa 473; *Corson v. Anchor Mut. F. Ins. Co.*, 113 Iowa 641; *Henderson v. Standard F. Ins. Co.*, 143 Iowa 572; *Farmers Merc. Co. v. Farmers Ins. Co.*, 161 Iowa 5; *McDonald v. Equitable Life Assur. Co.*, 185 Iowa 1008.

It is true, the secretary, in his letters, insisted that the company was not liable for the loss of property actually mortgaged.

6. INSURANCE:
waiver: waiver
nonretractable.

But the waiver as to the prior mortgages had then been made by the adjuster, and acted upon by the appellee. A waiver, though without consideration, cannot be retracted. *Mettner v. Northern Nat. L. Ins. Co.*, 127 Iowa 205.

Ordinarily, the question of waiver arising from conduct is for the jury; but here, the evidence is undisputed, and the acts are unequivocal. Knowledge of all the mortgages is shown, and

7. INSURANCE:
waiver: waiver
per se.

the waiver of the provisions relating both to prior and subsequent incumbrances is evidenced by unambiguous writings, clearly evincing an intent, when all are considered, to admit a liability for the insured property destroyed.

It is plain that, notwithstanding the errors complained of, upon the whole record, and under the facts as they would have appeared had the excluded testimony been admitted, the result could not have been different. This being so, the judgment must, under the authorities cited, be, and it is,—*Affirmed*.

FAVILLE, C. J., and STEVENS and DE GRAFF, JJ., concur.