W. J. BRINEY, appellee, v. TRI-STATE MUTUAL GRAIN DEALERS FIRE INSURANCE COMPANY, appellant.

No. 50653.

(Reported in 117 N.W.2d 889)

674

NOVEMBER 13, 1962.

REHEARING DENIED JANUARY 15, 1963.

John D. Randall, of Cedar Rapids, for appellant.

O. W. Lawrence, of Cedar Rapids, and J. E. Heiserman, of Anamosa, for appellee.

LARSON, J.—Plaintiff, W. J. Briney, seeks recovery from defendant, Tri-State Mutual Grain Dealers Fire Insurance Com-

pany, for a fire loss which occurred on October 23, 1958. He alleged in paragraph 6 of his petition "That the plaintiff has duly performed all the conditions and complied with all the conditions of the said policy to be performed on his part." In Division I "Defendant denies the allegations of Paragraph 6 of plaintiff's Petition." In Division II defendant alleged there was a violation of the occupancy clause of the policy making plaintiff's policy of insurance "null and void". In reply plaintiff first denied the allegations of defendant in Division II and then by amendment of February 1, 1960, alleged that if there was any such breach the same was waived by defendant through the adjustment and payment of a prior claim on a loss arising a little over a month before, and a failure by it to terminate the coverage or refund the premium. The jury returned a verdict for plaintiff in the sum of $6030.99 plus interest. Defendant's motions for judgment notwithstanding the verdict and for a new trial were overruled, and judgment was entered for plaintiff. In this appeal defendant complains of the trial court's rulings on pleadings and evidentiary matters and its instructions to the jury. We find no reversible error.

As we understand it, appellant relies upon four propositions: (1) That the court erred in refusing to sustain defendant's motion to dismiss made at the close of plaintiff's case, and renewed at the close of all evidence, and its motions for judgment notwithstanding the verdict and for a new trial; (2) that the court erred in refusing certain evidence relating to the cause of the fire, and to the status of independent insurance adjusters in the trade; (3) that the court erred in refusing to give an instruction with respect to the necessity to furnish a proof of loss; (4) that the court erred in giving Instructions Nos. 5, 6 and 7, for the reason that they overemphasized plaintiff's theory of the case.

I. The first proposition argued by appellant is that plaintiff failed to prove he had given the company written proof of loss as required by both the policy and Code section 518.19, Code of Iowa, 1958, or that the company had waived its right to require such proof of loss.

Appellee's answer to this and also appellant's third contention is that no issue was ever raised in this action as to whether plaintiff furnished proof of loss. He admits his only pleading in that regard is found in the general allegation of paragraph 6. There it is stated plaintiff had performed and complied with *all* conditions of the policy, one of which he says was that "the insured shall give immediate written notice to this Company of any loss." It is his position that defendant's general denial of his allegation of paragraph 6 was not sufficient to raise the issue of whether he had failed in that regard, that if defendant had desired to raise that issue here, it had to do so in the proper manner—in a manner similar to that it used to allege a violation of the occupancy clause in the policy. He contends, except for a belated amendment to the answer in which it attempted to raise the issue, the only pleading in this case which referred to the proof of loss was that in paragraph 6.

Rule 98, Iowa Rules of Civil Procedure, provides: "Permissible conclusions—denials thereof. * * * corporate authority to sue or do business in Iowa; or *performance of conditions precedent;* or judgments of a court, board or officer of special jurisdiction, may be pleaded as legal conclusions, without averring the facts comprising them. *It shall not be sufficient to deny such averment in terms contradicting it, but the facts relied on must be stated."* (Emphasis supplied.) Under this rule it would appear there was no issue raised herein as to whether proof of loss was properly filed or waived, and we have so held. Hart v. National Masonic Accident Assn., 105 Iowa 717, 75 N.W. 508; Conway Bros. v. Iowa Hardware Mutual Ins. Assn., 190 Iowa 1369, 181 N.W. 768.

Since defendant did not raise the issue by proper pleadings, the sufficiency thereof must be deemed admitted under rule 102 of the Iowa Rules of Civil Procedure, which provides: "Every fact pleaded and not denied in a subsequent pleading as permitted by these rules shall be deemed admitted except (1) allegations of value or amount of damage, * * *."

While such an admission may not be considered an admission against interest, which could be used in another action, it

does eliminate those issues in the present action. Evidence relating to performance of that precedent condition would, of course, not be relevant nor material to the only remaining issue in the pleadings, i.e., violation of the occupancy clause of the contract, and no instruction pertaining thereto would have been proper.

The problem was discussed in the early case of Brock v. Des Moines Ins. Co., 96 Iowa 39, 43, 44, 64 N.W. 685, where the court pointed out that plaintiff in his pleading did not state generally that he duly performed all the conditions on his part but undertook to set out the facts constituting the performance of the conditions of the policy. When those were denied, an issue was raised and it then became "necessary for plaintiff to establish the fact that he had given proper proofs of loss." In Hart v. National Masonic Accident Assn., supra, 105 Iowa 717, 722, 75 N.W. 508, it was said: "The averment of the petition * * * was a general statement to the effect that the plaintiff had performed all the conditions of the contract on his part, and was sufficient, under section 2715. The answer of the defendant contained a general denial, but the facts relied upon to show that due notice had not been given were not stated, and therefore the sufficiency of the notice was not in issue."

So far as material here, the provisions of section 2715 and rule 98, R. C. P., are the same.

In Conway Bros. v. Iowa Hardware Mutual Ins. Assn., supra, 190 Iowa 1369, 1373, 181 N.W. 768, it was pointed out that the effect of a general denial of a pleading is that the conditions precedent for recovery admit the material facts in such a case, and that since they are not in dispute, unless some special matter is pleaded that avoided legal liability thereon, the trial court could properly direct a verdict in favor of the plaintiff. Thus it appears that if defendant wished to rely upon the defense of failure to file proof of loss, it should have been specially pleaded. Apparently defendant chose to rely upon one defense, i.e., that plaintiff voided coverage under the policy by violation of the occupancy clause. It seemed a good defense. However, after plaintiff amended his reply alleging waiver, and the trial

had commenced, it seems defendant was not so sure the single issue was sufficient and attempted to raise another.

Unless the trial court was in error in striking defendant's amendment of April 18, 1961, during the trial, which attempted to raise the issue of failure to file proof of loss, the single issue raised by the pleadings was that relating to the occupancy clause of the policy. Under the circumstance no error appears.

Plaintiff's petition had been filed September 21, 1959. Defendant's answer including Division II alleging violation of the occupancy clause of the policy was filed October 27, 1959. Plaintiff's reply, filed November 3, 1959, was amended February 1, 1960. By the amendment plaintiff raised the issue of waiver of that violation, and so the matter stood when the trial began on April 17, 1961. On April 18, 1961, defendant filed its amendment in which it sought to raise the issue as to plaintiff's failure to furnish proof of loss. Upon motion it was stricken by the court.

We have no doubt the trial court was acting well within its discretion in refusing to allow the belated amendment and in striking the same. The rule is well established that broad discretion in the matter of permitting an amendment during the trial is given the trial court. Kuiken v. Garrett, 243 Iowa 785, 803, 51 N.W.2d 149, 160, 41 A. L. R.2d 1397; Elson v. Nickles, 240 Iowa 292, 294, 36 N.W.2d 343, 344; Webber v. E. K. Larimer Hdwe. Co., 234 Iowa 1381, 1389, 15 N.W.2d 286, 290; Robinson v. Home Fire & Marine Ins. Co., 244 Iowa 1084, 1090, 59 N.W.2d 776.

The question was discussed at some length in Russell v. Chicago, R. I. & P. R. Co., 251 Iowa 839, 844, 102 N.W.2d 881, and we said: "The long delay in filing the amendment was sufficient ground for the trial court, in its discretion not to permit it", citing cases. There an amendment which would necessitate a substantial change in the defense, filed three and one-half years after suit was filed, was stricken and an appeal followed. The situations are quite similar.

If such an amendment were permitted here during the trial, about a year and a half after the answer had been filed, it would require plaintiff at that late hour to meet a new defense, and to

so change his burden at that time would seem unjust. Thus we think here there were sufficient grounds for the court's refusal. Under those circumstances we are at least satisfied there was no abuse of the court's discretion in striking the defendant's amendment.

What we have said disposes of the issue as to failure to submit proof of loss and, since that issue was not in the case, the court obviously did not commit error by refusing to admit testimony bearing upon that issue nor by refusing to submit an instruction to the jury thereon.

II. Perhaps the principal questions presented to us are whether plaintiff's evidence supports his contention that the defendant had knowledge of the existing conditions at the premises through Mr. John E. Nagle, an adjuster who was sent to investigate a loss due to a fire about a month before the one involved in this case, and whether the company, by not canceling the policy, by retaining the premium and paying the first loss, led plaintiff to believe he had coverage on the premises despite the extra hazard then existing. In other words, was it sufficient to justify a court instruction on waiver and a jury finding that plaintiff's violation of the occupancy clause was waived by the defendant? We think it was.

From the record we learn plaintiff's policy with defendant was a five-year policy expiring November 25, 1959; that it covered a duplex rental residential property owned by plaintiff; that on September 12, 1958, a fire occurred in the side occupied by Smith when a rug laid over the floor furnace caught fire; that plaintiff notified the insurance agency that sold him this policy, and that a Mr. Nagle, an adjuster, came to the premises to adjust the loss; also that Nagle looked around the premises and told plaintiff it appeared to him that tenant Smith had some operations going on in the basement that should not be; that the operation was a breach of the occupancy clause, a policy violation, which should be stopped. Plaintiff told Nagle that Smith was greatly in arrears in his rent and had said he would get out. It further appears he did not get out, the policy was never canceled, no part of the premium was refunded nor any communication received by plaintiff from the company except for the pay-

ment of the loss suffered on September 26, 1958. Plaintiff testified that he believed his policy was still in full force and effect and that he relied upon that supposition when he was not notified to the contrary.

On October 23, 1958, a flash fire occurred in the Smith portion of the basement which seriously damaged the duplex. The evidence fully sustains defendant's contention that there was a violation of the occupancy clause, for it was not denied that Smith had large amounts of inflammable materials in the basement and was manufacturing and storing rodent bombs made from a mixture of sulphur, sodium chloride and charcoal. It also appeared plaintiff knew or should have known of the operation and that Nagle advised him of the increased hazard. The crux of the case is whether the defendant is held to have knowledge and notice of the facts which became apparent to the adjuster, Mr. Nagle, when he and plaintiff examined the premises pursuant to the September 12 fire.

It is not denied that Nagle was representing the defendant-company when he called at the premises on September 12 or 13 to adjust the first fire loss. It is clear he was then doing the things which he was hired to do at the time.

Appellant, however, contends he was an independent adjuster, hired only for one job at a time and thus had limited authority and capacity. Nevertheless, it is difficult under this record to escape the conclusion that at the time he was representing the company adjusting the September 12 fire loss, he saw and recognized the violation and that he warned plaintiff about it. It is true that his duties were limited and that he himself had no power to waive the violation. But appellee does not contend he could or did. Appellee argues convincingly that, even so, the knowledge gained by Nagle at such a time was by law imputed to the company he was then representing in a related matter.

In 45 C. J. S., Insurance, section 694, page 655, it is stated: "Whatever knowledge of a breach of conditions is obtained by an adjuster while acting within the scope of his authority in adjusting the loss will be imputed to insurer", citing

Home Ins. Co. of New York v. Shepherd, Tex. Civ. App. 63 S.W.2d 758, and Bearns v. Miller, 27 Leh. L. J. 415.

In 29A Am. Jur., Insurance, section 1605, pages 694, 695, it is stated: "In general, an adjuster for an insurance company is a special agent of such company, and his powers and authority are prima facie coextensive with the business entrusted to his care, * * *. It has been held that one employed as a claim adjuster by an insurer is thereby given a character commensurate with that type of occupation so as to have all the apparent powers usually attaching to such an agent, and such authority is not limited by special instructions not divulged to the other party". Thus it is pointed out "the knowledge of an agent of the insurer, apparently clothed with authority to adjust a loss with insured, is imputed to the insurer whether communicated or not, * * *." State Farm Mut. Auto. Ins. Co. v. Porter (9 Cir., Cal.), 186 F.2d 834, 52 A. L. R.2d 499.

It is also pointed out in section 1102, page 265 of 29A Am. Jur., that "An adjustment of a loss with knowledge of grounds of forfeiture has been deemed a waiver of the forfeiture in the absence of any provision to the contrary", citing Levy v. Peabody Ins. Co., 10 W. Va. 560, 27 Am. Rep. 598. Appellee does not claim a waiver because of the acts of the adjuster, but asserts that his knowledge of the increased hazard was then imputed to the defendant. When possessed of that knowledge, he contends the company's approval and payment of the first claim of loss constituted a waiver of the defense of present occupancy violation.

While it is true the evidence refuted any actual knowledge by the company, we are satisfied under the law it was charged with that knowledge because it was gained by its representative acting within his scope of employment. It matters not whether such adjuster was hired for each job as it arose or was in full-time employment, just as long as the knowledge obtained was at a time when he was performing a related duty imposed upon him by his employment.

In the case of Terry v. American Ins. Co., 202 Iowa 1291, 1292, 1293, 211 N.W. 716, 717, the insurance company referred

a loss to an independent adjuster, who proceeded to make a personal inspection and investigation. He discovered an assignment and indorsement of consent, but did not mention them in his report to the company. The company claimed it had no such actual knowledge. The court stated: "It will be noted at this point that the adjuster employed by the defendant to give attention to this particular loss knew of the assignment of the policy and of the giving in form of defendant's consent thereto by defendant's agent. * * * The knowledge thus acquired by the adjuster was the knowledge of the defendant." (Citing Hemmings v. Home Mut. Ins. Assn., 199 Iowa 1311, 203 N.W. 818, and cases cited; Corson v. Anchor Mut. F. Ins. Co., 113 Iowa 641, 85 N.W. 806, and other authorities.) The court further recognized that the defendant was chargeable with the knowledge of the adjuster gained at that time, whether actually known or not.

Nothing in the insurance contract or in the company's corporate articles could change the company's legal obligation under the agency relationship. Section 515.125, Code, 1958 (now 1962), provides in part: "Agent—specific definition. Any officer, agent, or representative of an insurance company * * * who may * * * adjust losses, * * * shall be held to be the agent of such insurance company with authority to transact all business within the scope of his employment, anything in the application, policy, contract, bylaws, or articles of incorporation of such company to the contrary notwithstanding."

We are satisfied any knowledge of the conditions and increased hazard gained by the adjuster, Nagle, was imputed to the defendant-company, and that it did authorize the payment of the first fire loss made to plaintiff on September 26, 1958. It must also be concluded that the evidence introduced herein justified the submission of Instruction No. VII relating to increased hazard or occupancy, and that it justified an apparent finding of waiver herein. Probably it also was sufficient to establish estoppel.

III. It is stated on page 89 of 29A Am. Jur., Insurance, section 875, that "Conduct on the part of the insurer or its authorized agents which justifies a reasonable belief on the part

of the insured that the insurer will not insist upon a compliance with the provision of the policy as to the location of the insured goods constitutes a waiver of the provision, or will estop the insurer from asserting a forfeiture. The * * * retention of the unearned portion of the premium [with knowledge that the insured has moved the goods to another location] precludes the insurer, as a general rule, from thereafter asserting the breach as a ground for forfeiture * * *." See annotations in 4 A. L. R.2d 900, sections 18 to 22 inclusive.

Also applicable here, we find in 29A Am. Jur., Insurance, section 1048, page 218, this statement: "In addition to the express waiver * * * there are many other ways in which an insurer may be deemed to waive, or be estopped to assert, such breach or cause of forfeiture. In general, any act, declaration, or course of dealing by the insurer, with knowledge of the facts constituting a cause of forfeiture or a breach of a condition in the policy, which recognizes and treats the policy as still in force and leads the person insured to regard himself as still protected thereby, will amount to a waiver of the forfeiture by reason of such breach, * * * and will estop the insurer from insisting on the forfeiture or setting up the same as a defense when sued for a subsequent loss." Also see annotation in 33 A. L. R.2d 615, sections 14 to 17 inclusive, where at page 662 appears the following: "Settlement of prior claim. Where the insurer obtained knowledge of the insured's method of compliance * * * when it settled a prior claim under the policy, it has been held unable to object to the failure of the insured to keep proper records when a later claim arose, the policy having been continued in force after the previous claim."

We ourselves have said in similar matters that "Forfeitures are not favored in the law", that "A waiver * * * is in effect an election not to take advantage of a technical defense in the nature of a forfeiture, and should be looked upon with liberality rather than with strictness", and that "It is not necessary, in order to constitute a waiver, that the facts shall be such as would support a plea of estoppel." Farmers Mercantile Co. v. Farmers Ins. Co., 161 Iowa 5, 15, 141 N.W. 447; Corson v.

Anchor Mut. F. Ins. Co., supra, 113 Iowa 641, 85 N.W. 806; Henderson v. Standard Fire Ins. Co., 143 Iowa 572, 121 N.W. 714.

Finally, in 45 C. J. S., Insurance, section 704, page 671, it is stated: "Conduct or acts on the part of the insurance company which are sufficient to justify a reasonable belief on the part of the insured that the company will not insist on a compliance with policy provisions constitute a waiver thereof or will estop the company from asserting a forfeiture. A waiver of the right to assert a * * * breach of a condition as to a policy of insurance * * * may be implied from conduct or acts on the part of the company or its authorized agent which are sufficient to justify a reasonable belief on the part of insured that the company will not insist on a compliance with policy provisions. A waiver arises from acts, words, or conduct on the part of insurer, done or spoken with knowledge of a breach of condition, which amount to a recognition of the policy as a valid, existing, and continuing contract, * * * or which are such as reasonably to imply a purpose not to insist on a forfeiture. After assuming one attitude as to known facts, the company is estopped from later assuming a different and inconsistent attitude to the injury of insured."

██ Instruction No. VII told the jury: "The plaintiff claims in his Reply to the Answer of the defendant that the defendant has waived any defense based upon any alleged increase of hazard arising through the use of the insured property. On this you are instructed that if you find from a preponderance of evidence that on or about September 12, 1958, a fire occurred on said premises, and that thereafter the defendant caused the adjuster, Mr. Nagle, to go to said premises on said date, or shortly thereafter, and observed said premises, and observed that same were being used for other than dwelling purposes, in violation of the terms of the policy, and you further find from a preponderance of the evidence that thereafter the defendant did not cancel said policy and did not refund to the plaintiff any of the premium which had been paid thereon and paid to plaintiff the amount of the loss, and permitted the plaintiff to believe the insurance was in force, and the plaintiff did so believe

and relied thereon, then you will find that the defendant has waived the defense of increased hazard."

The instruction was neither erroneous nor prejudicial as an overemphasis of plaintiff's theory of the case.

The record evidence clearly sustains a finding that Nagle, as a representative of the company, investigated the premises to adjust the fire loss of September 12; that the policy was never canceled nor a refund of premium ever made to plaintiff; that pursuant to his report the first fire loss was honored and paid in the sum of $98.50 on September 26, 1958. In order, then, for the jury to have found for plaintiff on his theory, it must have found that defendant, possessed of the knowledge of conditions on the premises, permitted plaintiff to believe the property was still covered by his policy in spite of the increased hazard, and that he so believed and relied thereon. Apparently it so found and rejected defendant's claim that plaintiff represented to Nagle that Smith would move immediately. The instruction correctly told the jury that if, by its actions or lack thereof, the company caused plaintiff to rely on that waiver and failed to obtain further coverage, it waived the violation and could not then deny liability upon that ground. There was no error in the instruction.

IV. Next, defendant complains of the court's refusal to permit the deputy fire marshal's report, Exhibit "AO", to be introduced in evidence, or to receive into evidence the opinion of the city assistant fire chief as to the cause of the fire, or to permit the company claims manager to explain the status of an independent adjuster. Appellee contends and the court held that the fire officials' proposed testimony constituted hearsay because the conclusions drawn by the witnesses were based upon information and opinions given them by persons in or near the premises when the fire broke out. We shall not discuss this alleged error and the related subject of public officials' reports, for we must agree with the appellee that such testimony only tended to prove indirectly things upon which direct testimony had been given by both inspectors, i.e., that a manufacturing process using inflammable materials was being operated in the basement of these premises, that through carelessness or spon-

taneous ignition the place was set afire, and that the use and occupancy clause of the policy was violated. Clearly the hazard was increased by permitting such an operation, and so even if it be conceded the opinions of these public servants as to how the fire started should have been received, we find no prejudice resulted to defendant by its rejection.

The proffered testimony of defendant's claims agent, Claude Nelson, as to the status of an independent adjuster was properly excluded. It is a general rule that a witness is never permitted to give his opinion on a question of domestic law or upon matters which involve questions of law. 20 Am. Jur., Evidence, section 799, page 672. Therein it is pointed out the rule is applicable to both expert and nonexpert witnesses, and that testimony of such witnesses in general is confined to matters of fact as distinguished from matters of law. The attempt to have Mr. Nelson, the claims agent, give testimony as to the legal effect of the relationship between independent adjusters and fire insurance companies who hire them was therefore incompetent. True, he could tell how these adjusters are hired by his firm and how Nagle was hired in this case, but the legal effect of that relationship once established, authorized or confirmed, is purely and exclusively a question of law for the court. The evidence was quite clear that Mr. Nagle was representing the defendant-company when he called on plaintiff after the September 12 fire, and again after the October 23 fire. On the latter call he requested the nonwaiver agreement, Exhibit "AL", on behalf of defendant before he would investigate the loss. There was no claim that Nagle was clothed with authority to waive policy provisions. He was a representative of the defendant to do the things necessary to adjust the loss and, when performing that duty, knowledge gained by him as to occupancy or the use of the premises became the knowledge of the company. 45 C. J. S., Insurance, section 694, page 655; Terry v. American Ins. Co., supra, 202 Iowa 1291, 211 N.W. 716. On each visit Nagle observed the property and its use, and noted the violation. He could not escape that knowledge. On the other hand, it cannot be said the evidence compels a conclusion that plaintiff promised him Smith would

vacate the premises immediately after the first fire. At best he was only told Smith had promised to move. No date for his removal was mentioned. Thus the evidence would not compel a finding that the company, possessed of Nagle's knowledge, was misled as to a termination of the condition by any conversation between Nagle and the plaintiff. No such contention seems to have been made at the trial.

Our conclusion must be that the trial court did not err in refusing to permit the proffered testimony of Nelson upon the legal status of an independent claims adjuster.

V. Finally, defendant predicates error in giving Instructions Nos. V, VI and VII, for the reason that the same constitute an overemphasis of the theory of the plaintiff. This being a serious accusation, we have carefully examined these instructions and have also considered them in connection with the others given by the court. We have considered them in the light of appellant's separate and all-inclusive objections and exceptions, and find them without merit.

In its general exception appellant states: "The defendant objects and excepts to the statement of the issues and the instructions as a whole for the reason that all of the statements of the issues and the instructions are submitting to the jury the theory of the plaintiff, and in none of the instructions is the defendant protected as to its theory and the same as so submitted constitute a virtual direction of the verdict, not only with respect to liability, but also with respect to amount."

Its separate objections and exceptions were not much more specific. The question then arises as to whether defendant sufficiently complied with the requirements of rule 196, R. C. P. As stated by defendant itself, the purpose of rule 196 is to enable the trial court to correct any erroneous instructions before such instructions were submitted to the jury. Rule 196 provides in part: "* * * Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, * * * specifying the matter objected to and on what grounds."

Appellee's position, with which we agree, is that the defendant's exceptions were not sufficiently definite to comply

with rule 196, R. C. P., and that they do not overemphasize plaintiff's theory. We note Instruction No. III flatly tells the jury that plaintiff cannot recover if the hazard was increased by any means within the control or knowledge of the plaintiff, unless plaintiff has shown a waiver of this defense. Instruction No. V properly puts the burden of establishing its defense based upon the activities of Smith or the Smith Chemical Company on the premises. Instruction No. VI enlarges the instruction given in Instruction No. V, and Instruction No. VII, hereinbefore discussed, sets out the theory of plaintiff as to waiver. Taken individually or separately, we find no error in such instructions and, taken collectively, we find no unnecessary or unfair emphasis of either theory.

In its exception to Instruction No. VII defendant stated: "The defendant objects and excepts to Instruction No. 7 for the reason that the same constitutes an incorrect statement of law; it ignores the facts upon which the defendant would have certain rights under the contract, ignores the fact that there is not anything which would permit the waiver of a proof of loss; it is not a correct statement of the facts under the record (nor a correct statement of the facts under the record), nor a correct interpretation of the law as applied to the facts is an argument for the plaintiff; is a re-emphasis of the theory of the plaintiff to the detriment of defendant and prejudicial to the defendant."

While it is true this exception does not specify the matter objected to, or state the grounds with sufficient particularity, it is defective for quite another reason. In Willis v. Schertz, 188 Iowa 712, 175 N.W. 321, we pointed out that an exception stating "it is not a correct statement of the law" was not sufficiently definite under the rule, and in Ritter v. Andrews Concrete Products & Supply Co., 250 Iowa 297, 93 N.W.2d 787, we held an objection interposed to an instruction must point out wherein it is wrong so the trial court may correct it. Also to the same effect see Noble v. Edberg, 250 Iowa 1331, 98 N.W.2d 741.

Usually neither this court nor the trial court can reasonably be expected to pass upon an objection to instructions

unless it is pointed out with sufficient particularity wherein lies the impropriety or illegality, and certainly a general exception to all instructions on the ground that they overemphasize the other's theory of the case would be of no aid to corrective efforts.

Having found no reversible error the judgment of the court must be affirmed.—Affirmed.

All JUSTICES concur except STUART, J., who takes no part.