AUGUST SCHROEDER v. THE FARMERS' MUTUAL FIRE
INSURANCE COMPANY OF OGEMAW, ARENAC,
AND IOSCO COUNTIES.

*Mutual insurance company—Withdrawal of member—Surrender of
policy—Charge to jury.*

1. Where the charter of a mutual fire insurance company provides
   for the withdrawal of a member by returning his policy to
   the secretary, and paying all assessments to which he is then
   liable, such withdrawal cannot be effected so as to release the
   member or the company from liability without surrender of
   the policy.
2. It is error to instruct the jury that the undisputed testimony
   shows a certain state of facts when there is contradictory tes-
   timony on the subject.

Error to Ogemaw. (Simpson, J.)  Argued June 18,
1891.  Decided July 28, 1891.

*Assumpsit.*  Plaintiff  brings error.  Reversed.  The
facts are stated in the opinion.

*Tarsney & Weadock,* for appellant.

*Markey & Hall,* for defendant.

LONG, J.  On the 24th day of January, 1888, plaintiff
became a member of the defendant company, taking out
a policy on his dwelling-house, furniture, clothing, and
provisions therein, and upon his barn, hay, and grain.
On the 20th day of January, 1890, his house and con-
tents were destroyed by fire.  He presented his proofs of
loss to the secretary of the company, and asked to have
it adjusted.  The company refused payment upon the
ground that he had voluntarily withdrawn from the

company prior to the time of the fire. This action was commenced by declaration, and the defendant pleaded the general issue, with notice of such voluntary withdrawal. On the trial, verdict and judgment were rendered for the defendant.

Plaintiff brings error. But two questions are raised in this Court.

The only question at issue below was whether the plaintiff, at the time of his loss, was a member of the company. Mr. Rose, secretary of the company, testified that on November 21, 1889, the plaintiff paid up his dues and assessments, and directed him to take his name off the books, as he desired to withdraw from the company; and that in pursuance of that he made an entry upon the books in pencil, "Withdrawn, Nov. 21, 1889; policy not returned." Mr. Rose further testified that he had a conversation with plaintiff some time before this, three or four weeks, in regard to his insurance, in which the plaintiff said the insurance was too high, and he could not stand it, and he would have to carry his own insurance thereafter; that when the $4 was paid, on November 21, he told the plaintiff he would take his name off the books, and would do it that night, to which the plaintiff responded, "Very well," and that he made an entry upon the books that same evening; that the $4 paid all the plaintiff's assessments and dues up to that time, and since which time the plaintiff has not been treated as a member of the company; that he reported this fact to the directors of the company at their meeting on January 7, 1890.

The plaintiff contends, and so testified upon the trial, that he never stated to the secretary that he intended to withdraw from the company, and had no talk with him in reference to a withdrawal, but that he paid his assess-

ments, when called upon, and still regarded himself as a member of the defendant company.

The question thus raised was submitted by the court in its general charge to the jury, and they were directed:

"If Mr. Schroeder did meet Mr. Rose, the secretary of the company, and square up everything with the company, and it was agreed between them, or was talked so that each understood it, and understood it alike, that that should end their relations under this policy, then I charge you, as a matter of law, it was a contract which rescinded or ended their relations; and if they agreed to it, and understood it alike, and parted with that understanding, then I say that Mr. Schroeder ceased to be a member of the company, and the company ceased to be liable to him for any obligations, and he ceased to be liable for any."

The court further instructed the jury as follows:

"Now, then, gentlemen of the jury, in this policy, if the company desired to, there is a provision in the charter whereby they could require of Mr. Schroeder, before they released him from the obligations, that he surrender the policy. That was a matter they had a right to demand of him. If he had the policy, they had a right to have it surrendered before they released him, because the charter says that any member may be released from his connections by delivering his policy, and so signifying, and having it understood it squared up his account; and the undisputed evidence is that he did square up all his account with the company."

The contention of plaintiff's counsel is that the court was in error—

1. In leaving it as a question of fact for the jury to determine whether the plaintiff was a member of the company at the time of the fire.

2. In charging the jury that "the undisputed evidence is that he [plaintiff] did square up all his accounts with the company."

The defendant is a mutual insurance company, and

each policy-holder is a member. Among the provisions of the defendant's charter is the following:

"Any member may, at any time, withdraw therefrom by returning his or her policy or policies to the secretary, and by paying all assessments made, or liable to be made, for previous losses and debts, and claims then due, or liable to become due, from such member to the company."

It appears that the policy was never surrendered, and that the plaintiff has at all times paid and kept up his assessments since the time he became a member of the defendant company. This provision of the charter, which required the surrender of the policy at the time of withdrawal, points out the manner in which the insured ceases to be a member of the company, and, under the circumstances here shown, it was the duty of the court to direct the jury that the plaintiff was yet a member at the time of the fire and of the trial of the case, for the reason that he had not complied with the terms and conditions of the charter by surrendering his policy at the time the secretary claims he withdrew from the company.

The court in its charge seems to have understood the right of the company to require the surrender of the policy before the withdrawal became operative and effective, so far as the rights of the company are concerned, and yet he directed the jury that the withdrawal became complete, if the secretary and the plaintiff so understood it, though the policy was not surrendered. In this the court was in error. There was no such act done as required by the charter in order to withdraw from the company, and, had a fire occurred by which other members met with losses, the plaintiff could have been held liable to an assessment for his proportionate share of such losses. This obligation still resting upon the plaintiff, the defendant company must be held equally bound, under the circumstances, to pay the plaintiff's loss.

But even under the theory adopted by the court, that this arrangement, as testified to by the secretary, amounted to a release of the company, and operated to release the plaintiff from the company, the court was in error in stating to the jury that the undisputed testimony showed that plaintiff squared up all of his account with the company. The plaintiff testified that he paid all his assessments upon that date as demanded by the company, and did not intend to withdraw, contradicting what the secretary had testified to in regard to his intended withdrawal. From the language used by the court in its charge, the jury must have understood that there was no dispute by the plaintiff that he intended to and did square up his account, which is denied by the plaintiff, except that he paid his assessment as demanded.

The verdict and judgment must be set aside, and a new trial ordered.

CHAMPLIN, C. J., MORSE and McGRATH, JJ., concurred with LONG, J.

GRANT, J. I cannot concur that the surrender of the policy was essential to withdrawal.

If the testimony of the secretary was disputed, it should have been left as a question of fact for the jury.