## NICHOL v. MURPHY.

1. RECEIVERS—RESIGNATION—APPOINTMENT OF SUCCESSOR—REGU-
LARITY—COLLATERAL ATTACK.

The regularity of the acceptance of the resignation of a receiver
of a mutual insurance company and the appointment of his
successor by the court having jurisdiction of the receivership
proceedings, as affected by want of notice to the stockholders,
cannot be questioned by defendant in an action by the re-
ceiver to collect an assessment.

2. SAME—NOTICE—NECESSITY.

No notice is required of the acceptance of the resignation of the
receiver of a mutual fire-insurance company and the appoint-
ment of his successor.

3. VENUE — CHANGE — RECEIVERSHIP PROCEEDINGS — NOTICE TO
STOCKHOLDERS.

The 9,000 policy holders of a mutual insurance company are
not entitled to notice of an application to change the venue
of receivership proceedings winding up the affairs of the com-
pany.

4. SAME—COLLATERAL ATTACK.

The question of the validity of an order changing the venue of
receivership proceedings to wind up the affairs of a mutual
fire-insurance company cannot be raised by defendant in an
action by the receiver to collect an assessment.

5. RECEIVERS—ASSESSMENT—SETTING ASIDE—REVIEW OF ORDER.

The action of the court, in setting aside an assessment by a re-
ceiver against the policy holders of a mutual insurance com-
pany, is not reviewable on appeal from a judgment against a
policy holder based on a subsequent assessment unless it was
void.

6. SAME—DISCRETION OF COURT.

It is within the discretion of the court to set aside an assess-
ment by the receiver of a mutual insurance company against
the policy holders for irregularities and because excessive,
though the assessment was not absolutely void.

7. SAME—SUBSEQUENT ASSESSMENT.

Where an assessment by the receiver against the policy holders
of a mutual fire-insurance company has been set aside in the

proper exercise of discretion, an order authorizing a substi-
tuted receiver to make a new assessment is valid.

8. INSURANCE — MUTUAL FIRE COMPANIES — CONTRACTS LIMITING
LIABILITY OF POLICY HOLDERS—STATUTE—APPLICATION.

Section 5187, 2 Comp. Laws, validating contracts between
mutual fire-insurance companies and their policy holders, in
terms applies only to contracts theretofore made (1885), and
has no application to a contract limiting the liability of the
policy holder made in 1896.

9. SAME—RECEIVER—ASSESSMENT.

A limitation in the contract between a policy holder and a mut-
ual fire-insurance company cannot relieve the policy holder
from a liability to pay a proportionate share of the losses and
expenses of the company for the period during which he was
a member, when the company's affairs are being closed up
by a receiver.

10. SAME — CANCELLATION OF POLICY — NONPAYMENT OF ASSESS-
MENT.

Where, at the time a policy holder in a mutual fire-insurance
company sought to withdraw, and delivered his policy to
the local agent for that purpose, there was an assessment due,
which he did not pay, his attempt to withdraw was ineffect-
ual, and he remained a member of the company for the term
stated in his policy, and was liable for his share of its losses
during that term.

Case made from Ionia; Davis, J. Submitted July 9,
1906. (Docket No. 115.) Decided July 23, 1906.

Assumpsit by John Nichol, receiver of the Citizens'
Mutual Fire-Insurance Company of Jackson, Michigan,
against Edwin A. Murphy for an assessment in winding
up the affairs of said company. There was judgment for
plaintiff, and defendant appeals. Affirmed.

*A. A. Ellis* (*M. A. Nichols*, of counsel), for appellant.
*Nichols & Sheldon*, for appellee.

HOOKER, J. The Citizens' Mutual Fire-Insurance
Company, of Jackson, Mich., was organized on March 21,
1893, under Act No. 82 of the Laws of 1873 of this State,

and the acts amendatory thereto.  The defendant, Murphy, made a written application for insurance against fire on November 14, 1896, and upon that day a policy was issued to him for the term of three years.

On December 7, 1899, the commissioner of insurance of the State, after making an examination of the affairs of the company, served notice upon its officers, requiring it to discontinue the issuing of policies at the expiration of 60 days, unless it should within that time collect assessments and pay losses and claims outstanding, and on May 22, 1900, he filed a petition in the circuit court for Jackson county for a receiver and to wind up the affairs of the company, and Forrest C. Badgley was appointed receiver, and he took possession of the property of the company. He subsequently obtained an order permitting him to levy an assessment, which he proceeded to do.  This assessment was levied in relation to specific periods, 11 in number, and, when made, it was duly confirmed by the court. About $1,000 was collected upon this assessment, none of it paid by the defendant herein.  Badgley brought an action against one Wood, in Jackson circuit court, to recover an assessment made against him, and the case was tried, James A. Parkinson acting as counsel for the receiver. Before the cause was decided, the presiding judge died, and Mr. Parkinson was elected his successor.  On February 17, 1906, Badgley filed a petition setting up these facts and that it was impracticable for him to wind up the business, and his desire to resign.  The commissioner of insurance supplemented this with his petition asking the appointment of John Nichol as receiver in place of Badgley.  Thereupon said Parkinson procured the attendance of Hon. Frank D. M. Davis, judge of the eighth judicial circuit, who heard the application and made an order accepting Badgley's resignation, and appointing Nichol his successor.  Nichol accepted and qualified, and on the same day applied to the court for a change of venue, or transfer of the proceeding to Ionia county, where he resided, upon the ground that the judge of Jackson circuit was

disqualified to act as judge in the matter. Thereupon said Davis, while so presiding at the Jackson circuit, made such an order. Subsequently, and on March 22, 1906, Nichol, as receiver, filed a petition alleging irregularities in said assessment theretofore made by Badgley, and that it was grossly excessive in amount, and asking that it be set aside, and authority given him to make a new assessment for 75 per cent. of the amount of said first assessment; and it was so ordered. Such assessment was made and confirmed, and the receiver was directed to proceed to collect the same. This action was brought to collect the share due from the defendant.

Upon the trial the court found the foregoing facts, and that by virtue of the policy the defendant became a member of the company, and that as such he was assessed and had paid the sum of $2.30, and that he was assessed the further sum of $2.88, which he did not pay; also that about a year after the policy issued, and after the payment of said $2.30, defendant notified one Charles P. Locke, a local agent of the company, that he desired to have said policy canceled, and he surrendered the same to said Locke, but it does not appear that the officers of the company, or any of them, were notified of such action at the time, and on November 18, 1899, the company sent defendant an application for renewal of his policy, on receiving which, he wrote the company as follows:

"IONIA, MICHIGAN, October 19th, 1899.
"THE CITIZENS' MUTUAL FIRE-INSURANCE COMPANY,
"Jackson, Michigan.
" *Gentlemen:* Your notice of expiration of insurance is at hand, and will say I withdrew from your company about two years ago, I think. Your agent, Charles P. Locke, of this city, was so notified and he so understood.
"Respectfully yours,
"E. A. MURPHY."

The following reply was sent him:

"JACKSON, MICHIGAN, October 21, 1899.
"E. A. MURPHY, Attorney,
"Ionia, Michigan.
" *Dear Sir:* In regard to your policy No. 3,552 the

situation is this: The policy was issued November 14, 1896, for three years, calling for $1,000, at the gross rate of $1.15, making your gross premium at $11.50. You paid $2.30 that year and an assessment of $2.30 in 1897, and an assessment of $2.88 was levied, due November 14, 1898, which you did not pay. We notified you that this assessment must be paid if you wish to retain the insurance, or if you desire cancellation, the policy must be returned, and the per cent. necessary at the time to relieve you was twenty-five per cent. of the unassessed premium, or $1.72. That liability still remains and trust you will remit at once. Enclosed find copy of two sections of our charter which will show you our authority for making such statement.

"Yours respectfully,
"THE CITIZENS' MUTUAL FIRE-INSURANCE CO."

The defendant did not pay said sum, and in levying the assessment, the receiver levied the same for the full three years covered by his policy, a total of $32.42.

The court further found that at the time he took his policy it was represented to him, and he understood, that he would only be obliged to pay his equitable annual proportion of the rate necessary to pay the losses and expenses, not exceeding the sum specified in his application, during the life of his policy, to wit, $11.50, and that he paid no part thereof. That the receiver in levying the assessment only charged and assessed against said defendant his pro rata of the losses and expenses of the company, and the costs and expenses of such receivership, allowing a sufficient amount to cover all possible failures to collect, by reason of irresponsible membership and costs of collection.

Counsel for the defendant (who has appealed from a judgment of $32.42 and costs in favor of the receiver) raise the following questions:

"(1) Could the circuit court for the county of Jackson, in chancery, make an order appointing John Nichol receiver, without notice?

"(2) Could the circuit court of Jackson county, in chancery, make an order transferring the proceedings to Ionia county, without notice?

" (3) Did the circuit court for Ionia county, in chancery, have the power to set aside the assessment made by Forrest C. Badgley, receiver?

" (4) Was the said John Nichol authorized to levy an assessment under the orders of the court?

" (5) Assuming that the court had jurisdiction in the premises, was the assessment legal, valid, and binding upon the defendant, under his contract?

" (6) If valid, what should be the amount of the judgment?"

1. The proceeding in which the receiver was appointed was one between the State, acting for the benefit of the creditors of the company, against the company. A receiver had been appointed after the notice required by law had been given. The property was in the custody of the court, by its representative, the receiver. An emergency arose where it was necessary to change the receiver. It was clearly within the authority of the court having jurisdiction of the case to accept Badgley's resignation, and to appoint a successor. If a proper notice was not served, as counsel contend, the advantage cannot be taken of it in a collateral proceeding which this is, *Howard* v. *Palmer*, Walk. Ch. (Mich.) 391; *Thomas* v. *Wayne Circuit Judges*, 97 Mich. 608. See 17 Enc. Pl. & Prac. p. 753, and cases cited; High on Receivers (3d Ed.), § 39*a*. There are many authorities which hold that an appointment made ex parte without notice to fill a vacancy is a valid act. See *Nicoll* v. *Boyd*, 90 N. Y. 516; *Attorney General* v. *Day*, 2 Mad. Chan. 470; *Fowler* v. *Trust Co.*, 66 Fed. 14; *Howarth* v. *Angle*, 162 N. Y. 179 (47 L. R. A. 725); *Sanger* v. *Upton*, 91 U. S. 56. Were this a hearing in a direct proceeding to review the proceeding, we should be compelled to say that there is no occasion to disturb the order made.

2. The application to change the venue of the receivership proceedings was made to the court in which the action was pending, a judge of another circuit presiding. The members of the corporation, said to number some 9,000, were not entitled to notice. It would have been imprac-

ticable to give it.   Moreover, if the defendant in this action has any right to question the order, he should have applied in a direct proceeding.   The order cannot be made a shuttlecock in the 9,000 or less actions that must be commenced to collect assessments.

3. The order of the court in setting aside the Badgley assessment is not reviewable in this action unless it was void.   We think that it was within the discretion of the court to set aside such assessment for irregularities, and because excessive, although perhaps not a void order.   It does not appear that the defendant's liability was in any way increased by such action.

4. The order authorizing Nichol to make the last assessment must be held to be valid, in view of what we have said upon other points.

5. The contention is made that defendant's liability is limited to $11.50 by his contract.   This is settled against plaintiff's contention by the case of *Russell* v. *Berry*, 51 Mich. 287, as the law stood prior to the enactment of 2 Comp. Laws, § 5187, in 1885.   That act in terms applies only to contracts theretofore made, and hence has no application to this case, and need not be further discussed. We have said in other cases that a limitation in the contract could not relieve members from a liability to pay a proportionate share of losses and expenses of a mutual fire-insurance company, for the period during which they were members, when the company's affairs are being closed up by a receiver.   *Russell* v. *Berry*, supra; *Macklem* v. *Bacon*, 57 Mich. 334; *Bacon* v. *Clyne*, 70 Mich. 183; *Wardle* v. *Townsend*, 75 Mich. 385 (4 L. R. A. 511); *Wardle* v. *Cummings*, 86 Mich. 395; *Wardle* v. *Hudson*, 96 Mich. 432; *Ionia, etc., Ins. Co.* v. *Otto*, 96 Mich. 558, 97 Mich. 522; *Same* v. *Ionia Circuit Judge*, 100 Mich. 606 (32 L. R. A. 481); *Detroit, etc., Ins. Co.* v. *Merrill*, 101 Mich. 393; *Calkins* v. *Angell*, 123 Mich. 77.

6. The remaining question involves the alleged cancellation.   Upon the finding of fact that the plaintiff delivered his policy to the local agent, and asked to with-

draw, it is contended that plaintiff was not thereafter liable for assessment for losses and expenses subsequent to that time.    As we understand the record, if this was a cancellation, his liability should be limited to $13.09.    If not, the assessment should cover the term of his policy, which would make his liability $32.42.    There is no doubt that the plaintiff sought to withdraw from the company, and gave his policy to the local agent, with such request.    At that time he had been assessed $2.88, which he did not pay or offer to pay, and when, two years later, he wrote the company, and was advised that a liability remained yet, he did not pay it or respond further.    His policy had then expired, and he probably supposed that no further liability remained except for assessments already, made, which he did not pay.    In that he was mistaken.    See *Schroeder* v. *Insurance Co.*, 87 Mich. 310; *American Ins. Co.* v. *Woodruff*, 34 Mich. 6; *Buick* v. *Insurance Co.*, 103 Mich. 75; *Snedicor* v. *Insurance Co.*, 106 Mich. 83; *Manlove* v. *Bender*, 39 Ind. 371; *Burmood* v. *Insurance Co.*, 42 Neb. 598.

The judgment is affirmed.

CARPENTER, C. J., and MCALVAY, GRANT, and MOORE, JJ., concurred.