NATIONAL BEN FRANKLIN INSURANCE COMPANY OF
MICHIGAN v WEST

Docket No. 68136. Submitted June 7, 1984, at Detroit.—Decided
August 6, 1984. Leave to appeal applied for.

Stephen Schroeder, an account executive with Sohigian and
Partners, leased a Pontiac Trans Am from Lease Car of Amer-
ica, Inc. Schroeder was required to secure insurance on the car
in order to keep his lease alive. Because of his bad driving
record, Schroeder had his girlfriend, Marilyn Graves, apply for
the necessary insurance through AAA. The policy issued to
Graves shows Lease Car as the titleholder and Graves as the
principal driver, with the car being used for pleasure. Six
months later, the policy was renewed. Before the expiration of
the policy, Schroeder decided that he would like to lease a
Corvette instead of the Trans Am. The Corvette was ordered by
Lease Car. Jack West, another employee of Sohigian and Part-
ners, decided that he would like to have the Trans Am. Sohi-
gian and Partners agreed to take over the lease of the Trans
Am for West's benefit. Before Lease Car would deliver the
Corvette to Schroeder, it required that Schroeder provide insur-
ance on the Corvette. Schroeder called AAA, canceled the
coverage on the Trans Am and had the policy switched to cover
the Corvette. West called Paragon Underwriters to get a binder
of insurance so that he could take the Trans Am. Paragon
informed West that he was covered. Marilyn Graves then went
to AAA to have the insurance policy transferred from the
Trans Am to the Corvette. She was informed that her coverage
on the Trans Am would be canceled as of March 16, 1978. AAA
also sent notice to Lease Car informing it that coverage on the
Trans Am had been canceled as of March 16, 1978, but that
Lease Car's interest would be covered for a period of ten days

REFERENCES FOR POINTS IN HEADNOTE

7 Am Jur 2d, Automobile Insurance §§ 7, 36-40.

Right of "named insured" in automobile insurance policy to delete
coverage on nonowned automobile or other vehicle without notice
to owner or operator thereof. 13 ALR4th 905.

Cancellation of compulsory or "financial responsibility" automobile
insurance. 34 ALR2d 1297.

from the date of notice, which was April 21, 1978. On April 26, 1978, West's son, David, was involved in a serious accident while driving the Trans Am. The other driver involved in the accident was killed and David West and Lease Car were sued by his estate. The lawsuit was settled for $1,300,000. National Ben Franklin Insurance Company of Michigan, the fleet carrier for Sohigian, where Paragon had placed its requested coverage, brought suit against Jack and David West in Oakland Circuit Court seeking a declaratory judgment to the effect that Jack and David West had no interest in the fleet policy covering Sohigian. Lease Car intervened in the action, and the Wests added Paragon Underwriters as a third-party defendant, claiming that Paragon's agents neglected to insure the Trans Am although requested to do so by the Wests. Lease Car then filed its own third-party complaint against Detroit Automobile Inter-Insurance Exchange, Schroeder, Graves, Sohigian and Partners, and Sohigian's president, seeking a declaration that the Trans Am was insured by DAIIE on the day of the accident. The Wests then filed a third-party complaint against DAIIE seeking a declaration that DAIIE insured the Trans Am on the date of the accident and seeking an order compelling DAIIE to perform its obligations under the Michigan no-fault law. A flurry of motions were then made by the various parties. The court, John N. O'Brien, J., ruled that DAIIE had provided coverage on the Trans Am through May 1, 1978, because of its notice of cancellation sent to Lease Car, and that DAIIE was liable to the Wests for no-fault benefits. The court also held that DAIIE was estopped from defending on the basis of the statute of limitations because after the accident DAIIE's agent had told Schroeder the policy had been canceled. A motion by the Wests for summary judgment against National Ben Franklin was denied. A motion by Lease Car for summary judgment against DAIIE was granted on the basis that the policy had not been effectively canceled. The court also ruled that DAIIE was estopped from relying on the one-year-back rule to limit the Wests' recovery of benefits to one year. The court further held that DAIIE was liable for primary coverage incurred as a result of the accident and Lease Car was entitled to DAIIE's $100,000 limit, that this was not a money judgment, and that Lease Car was not entitled to interest on the award. Lease Car appeals from the denial of interest. DAIIE appeals from the order against it. *Held:*

The notice of cancellation to Lease Car is of no legal consequence. Coverage of the Trans Am by DAIIE was canceled effective March 16, 1978. The trial court's declaratory judgment

that DAIIE was the primary insurer of the Trans Am on April 26, 1978, and that DAIIE was liable to West for no-fault benefits is reversed. The other issues need not be ruled on in light of this finding.

Reversed.

INSURANCE — NO-FAULT INSURANCE — CANCELLATION OF INSURANCE — NOTICE.

A notice of cancellation of insurance by an insurer to the titleholder of an automobile informing the titleholder that insurance on the vehicle was canceled by the titleholder's lessee and that the titleholder's interest would be insured for a period of ten days from the date of the notice was of no legal consequence and did not act to revive the canceled policy where the insurer, the titleholder and the lessee were all aware of the cancellation and the cancellation was ordered by the lessee and was required by the titleholder.

*Hertz & Schram, P.C.* (by *Gary M. Saretsky*), and *Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*), of counsel, for defendant, third-party plaintiffs and appellees Jack and David West.

*Barbier, Goulet & Petersmarck, P.C.* (by *George E. Petersmarck, Jr.*), for intervening defendant, third-party plaintiff, appellee and cross-appellant Lease Car of America, Inc.

*Beier, Howlett, Hayward, McConnell, McCann, Jones, Kingsepp & Shea* (by *Pamela Gaudreau Shea*), for third-party defendant, appellant and cross-appellee Detroit Automobile Inter-Insurance Exchange.

Before: R. M. MAHER, P.J., and HOOD and R. B. MARTIN,* JJ.

R. B. MARTIN, J. This case concerning rights

---

* Former circuit court judge, sitting on the Court of Appeals by assignment.

under a contract of insurance has an involved factual situation. The parties have agreed upon the basic facts with some dispute in minor areas which do not affect the legal ramifications.

Stephen Schroeder was an account executive with Sohigian and Partners. On June 13, 1977, he leased a Pontiac Trans Am from Lease Car of America, Inc. The lessor was to provide public liability and property damage insurance in the amount of $1,000,000 for protection of the lessor and the lessee against liability for bodily injury and property damages. The lessor agreed to assume responsibility for damages against theft or collision. There was a further provision that if the lessor or its insurance company were unwilling to insure the lessee, the lessor could cancel the lease forthwith. The lessee would then have a right to secure his own insurance and the lease could be reinstated.

Lease Car insured through Maguire Insurance Agency until Maguire in July, 1977, notified Lease Car it was canceling as of August 26 because Schroeder had an unacceptable driving record. Lease Car informed Schroeder he would have to secure his own insurance to be able to keep the lease on the Trans Am alive.

Schroeder had Marilyn Graves, a girlfriend, apply for insurance through Terry Belfry at the Grosse Pointe office of AAA. The application is dated September 16, 1977. It shows Lease Car as the titleholder and Marilyn Graves as the principal driver. A slash mark crosses through the space for "other drivers". The automobile would be used for pleasure and the policy was to run to March 16, 1978. A policy of 100/300 was issued. The original declaration certificate in Item 1 "Named Insured(s) and Mailing Address" listed Marilyn

Graves as principal named insured and Lease Car as another insured. It shows her as a principal driver for pleasure.

The policy of insurance includes the declaration certificate as part of the contract. In the policy itself, in the section under liability protection, the "persons insured" are "the named insured and any relative".

The paragraph on definitions states, "Under Section I(a) 'named insured' means the person or persons named in Item 1 of the Declaration Certificate". Subsection 15, the cancellation provision, states:

"This policy may be canceled upon request of the named insured by surrender thereof to the Exchange or any of its authorized agents or by mailing to the Exchange written notice stating when thereafter the cancellation shall be effective. * * * This policy may be canceled by the Exchange by mailing or delivering to the insured named in Item 1 of the Declaration Certificate at the address last known to the Exchange or its authorized agent, 10 days written notice of such cancellation with notice that * * *."

Marilyn Graves never used the car but Schroeder did, both for business and pleasure. Schroeder also paid the renewal premium due in March to extend the coverage to September 16, 1978. The renewal declaration certificate showed Marilyn Graves as the principal named insured and Lease Car as an insured. Again Marilyn was listed as principal driver and for pleasure.

Sometime in the spring of 1978 Schroeder decided he would like to lease a Corvette instead of the Trans Am. Arrangements had to be made. The Corvette was ordered. Jack West, Schroeder's fel-

low employee at Sohigian, decided he could use the Trans Am. Sohigian's president acknowledged that his firm would take over the lease of the Pontiac for West's benefit. Dennis Lynch, agent for Lease Car, deposed that the president had so informed him.

When the Corvette became available, Lynch prepared a new lease for Schroeder to sign for this Corvette and a new lease for Sohigian to sign for the Trans Am. Schroeder was told by Lynch that before delivery of the Corvette could be made to him, an insurance binder would have to be secured and Mr. West would have to get insurance on the Trans Am. Lynch knew Schroeder intended to transfer his policy from the Trans Am to the Corvette.

Schroeder called Belfry at AAA and canceled the coverage on the Trans Am by transferring it to the Corvette. Schroeder also deposed that immediately thereafter West called Paragon Underwriters to get a binder before taking the Pontiac home that day. West deposed that he had contacted Paragon and was told that he was covered.

Sometime between March 16, and April 21, the exact time is in dispute, Marilyn Graves went personally to the AAA office and signed an application to transfer her policy to the Corvette. AAA claims the date was March 16, 1978. The exact date is immaterial. They sent her a notice that they were canceling her policy at her request as of March 16, 1978. Undisputed is the fact that DAIIE on April 21, 1978, sent a notice to Lease Car dated April 21, 1978, saying, "Coverage under this policy for the insured property is being terminated on 3/16/78 at 12:01 a.m. * * * we will protect your interest for a period of ten days from the date of this notice." If this notice was effective, it would

have the Trans Am automobile covered until May 1, 1978.

An employee of Lease Car deposed that on receipt of the "additional interest notice" he would conclude Lease Car had ten additional days to secure other coverage.

On April 26, 1978, Jack West permitted his 16-year-old son David to drive the Trans Am. The son was involved in a serious accident in which he and his passengers were seriously injured and Mr. Dameron, the owner of the car David West struck head-on, was killed.

Sometime after the accident Schroeder called Belfry at AAA and was told that the policy on the Trans Am had been canceled. On an apparent second call concerning the cancellation the accident was mentioned.

David West became 18 on June 8, 1979.

We now enter the jungle of this lawsuit.

On August 1, 1978, the estate of Dameron sued David West and Lease Car. Ultimately this was settled for $1,300,000.

On August 2, 1978, this particular litigation was commenced by Ben Franklin, the fleet carrier for Sohigian where Paragon had placed its requested coverage. Ben Franklin sought a declaratory judgment to the effect that Jack and David West had no interest in the fleet policy covering Sohigian.

Lease Car as titleholder of the Trans Am intervened and later the Wests added Paragon Underwriters as a third-party defendant. The Wests claimed Paragon's agents neglected to insure the Trans Am although requested to do so by the Wests.

In July or August, 1979, Lease Car filed its own third-party complaint against DAIIE as well as against Schroeder, Graves, Sohigian, and Sohigi-

an's president. Lease Car sought a declaration that the Trans Am was insured by DAIIE on the day of the accident.

In March, 1982, the court permitted the Wests to file a third-party complaint against DAIIE seeking a declaration that DAIIE insured the Trans Am on April 26, 1978, and seeking an order compelling DAIIE to perform its obligations under the Michigan no-fault law.

The court at the same time refused to permit the Wests to file a cross-claim against Lease Car alleging that Lease Car had failed to properly supervise the transfer of the leases and had failed to maintain no-fault coverage.

DAIIE filed a motion for accelerated judgment against the Wests on the basis of the statutes of limitation.

The Wests then moved for summary judgment against DAIIE on the basis that the additional interest notice to Lease Car left the policy on the Trans Am in effect. The Wests also moved for summary judgment against National Ben Franklin on the basis that at the time of the accident Sohigian had furnished West with a Cadillac insured under the fleet policy by Franklin and Franklin was thus responsible for first-party benefits.

These motions and others were heard on October 26, 1982, less than a week before the trial date of November 1.

The trial court ruled that DAIIE had provided coverage through May 1, 1978, and was liable to the Wests for no-fault benefits. The court held that DAIIE was estopped from defending on the basis of the statute of limitations because after the accident Belfry had told Schroeder that the policy had been canceled.

The Wests' motion against Ben Franklin was denied.

On November 1, 1982, Lease Car submitted a motion for summary judgment against DAIIE. It was granted on the basis that the policy had not been effectively canceled.

On March 9, 1983, the trial court ruled that DAIIE was estopped from relying on the one-year-back rule to limit the Wests' recovery of benefits to one year.

On April 4, 1983, the circuit judge held for Lease Car on its motions for a declaratory judgment that DAIIE was liable for primary coverage incurred as a result of the accident and that Lease Car was entitled to DAIIE's $100,000 limit. The judge further ruled that this was not a money judgment and that Lease Car was not entitled to interest on the award. Lease Car appeals from the denial of interest. DAIIE appeals from the orders against it.

All claims asserted by or against Schroeder, Graves, Paragon, Sohigian, Sohigian's president, and National Ben Franklin have been dismissed with prejudice by stipulation of all parties.

The first and most important question is whether or not the DAIIE policy on the Trans Am was still in effect on April 28.

There is no question but that Schroeder and Marilyn Graves both notified DAIIE before April 28 that they wanted the coverage on the Trans Am canceled by transferring it to the Corvette. This was actually done, and if the Corvette had been involved in an accident on April 28, DAIIE would have been liable under this policy of insurance.

Lease Car and the Wests rely on the fact that an additional interest notice was sent to Lease Car informing Lease Car that it would be covered for

10 more days, to wit, until May 1. The policy permitted the insureds to cancel the contract. The statute which really covers the cancellation of insurance is MCL 500.3020; MSA 24.13020:

"(1)(a) That the policy may be canceled at any time at the request of the insured, in which case the insurer shall, upon demand and surrender of the policy, refund the excess of paid premium * * * for the expired time.

"(b) that the policy may be canceled at any time by the insurer by mailing to the insured * * * a 10 days' written notice of cancellation * * *."

Our first bridge to be crossed is a determination as to whether or not Lease Car was an insured. DAIIE knew Graves was a lessee. Her application clearly indicated Lease Car was the titleholder. The DAIIE declaration certificate, which was a part of the insurance contract, listed Graves as the principal named insured and Lease Car as an insured. The policy, under liability protection, stated that the "named insured" was insured, that the "named insured" meant the person or persons named in Item 1 of the declaration certificate, and that "the insured" meant a person or organization described under "persons insured". Thus, DAIIE by its own contract language had named Lease Car a named insured.

When Marilyn Graves canceled the insurance, was a notice necessary to Lease Car under the policy or MCL 500.3020?

In *DuBrul v American Manufacturers Mutual Ins Co,* 60 Mich App 299; 230 NW2d 404 (1975), the plaintiff owned a Ford van which she used in her employment as a self-employed person delivering catered food for Crown Catering. Plaintiff Crown Catering and the insurance company agreed to have the van insured under Crown's

fleet policy. A certificate was issued on March 15; on March 27 the defendant canceled Crown's insurance but did not notify the plaintiff. The plaintiff had an accident on April 9 and the defendant refused to defend. The Court had no problem finding that the plaintiff, as owner, was insured and that the insurer had to give her a ten-day written notice as well as notification to Crown Catering.

More complicated is a recent case by our Supreme Court, *Lease Car of America, Inc v Rahn,* 419 Mich 48; 347 NW2d 444 (1984). Lease Car leased an automobile to Rahn. Rahn was to purchase his own insurance. He bought a policy on October 8, 1977, which expired October 9, 1978. On or about October 8, 1978, this policy was renewed until October 8, 1979, but Rahn failed to pay the premium for the renewal year. The policy was canceled, effective December 9, 1978, by the insurer's giving notice to Rahn but no notice to Lease Car. On January 3, 1979, Rahn had an accident that totaled Lease Car's Mercedes Benz.

The policy stated that if the premiums were not paid "this policy may be canceled by the company by mailing to the insured named in Item 1 of the declarations * * * stating when not less than ten days thereafter such cancellation shall be effective".

There was an endorsement which stated that the word "Insured" "includes the named insured, and, except where specifically stated to the contrary also includes Lease Car of America * * *." The Court said:

"We conclude that when the Legislature promulgated MCL 500.3020; MSA 24.13020, it contemplated that notice of cancellation pursuant to this statute would be afforded to all of the parties insured under the policy.

The obvious objective of this statute is to make certain that all of those who are insured under a policy are afforded a period of time, ten days, either to satisfy whatever concerns have prompted cancellation and thus revive the policy or to obtain other insurance, or simply to order their affairs so that the risks of operating without insurance will not have to be run. That objective cannot be achieved if the insurer, pursuant to policy language, need only notify a designated insured that cancellation is imminent.

\*    \*    \*

"MCL 500.3020; MSA 24.13020 requires that notice of cancellation of a policy be given to 'the insured' without limitation. The statute makes no exception for a 'named insured', a 'designated insured', or the like. On the contrary, the statute calls for notice to be afforded to 'the insured'. Thus, the provision in the policy calling for notice of cancellation to be given only to Mr. Rahn has the effect of avoiding the statutory scheme. Moreover, it is well settled that the insurance laws are to be liberally construed in favor of policyholders, creditors, and the public." 419 Mich 54-55.

It seems that it could be argued that we actually have here one policy of insurance protecting two insureds, Marilyn Graves and Lease Car of America. Lease Car was an insured. Had the accident happened in February, 1978, with Marilyn driving no one would question but that Lease Car could look to DAIIE for assistance in paying off the judgment against itself. The difficulty in our case is that only one of the insureds canceled the policy. The contract between Graves and DAIIE had been canceled by the insured Graves. Lease Car had been informed by Schroeder that he was transferring the policy to the Corvette, but in the same period of time Lease Car received a notice from DAIIE that the policy had been canceled but Lease Car would be covered for 10 more days. Certainly DAIIE knew Lease Car had an owner's

interest in being protected from liability to third parties. That interest was entitled to notice when that insured was not the one seeking a cancellation of the policy. The Legislature and the Courts have an objective of giving each insured an opportunity to have a period of time after cancellation by someone else to revive the policy or secure other insurance. Insured third parties have a definite stake in such provisions also.

However, we are struck by the fact that both the policy and the statute require written notice only if the *insurer* cancels the policy. The cases cited *supra* were incidents where the *insurer* canceled the policy. Lease Car should stand in the same shoes as Graves. If Graves removes the shoes, Lease Car is stocking-footed also. In *Lease Car v Rahn,* the insurer was canceling the policy because of nonpayment of premium. Lease Car, as an owner and another insured, was entitled to notice. Here it is undisputed that Schroeder and Graves canceled the policy. They had it transferred to a Corvette. It is undisputed that before being able to get possession of the Corvette, Lease Car insisted on the Trans Am insurance being transferred to the Corvette. Lease Car knew when it released the Corvette that the Trans Am was no longer covered by the original policy. Lease Car insisted West secure his own policy on the Trans Am and relied on West's claim that he had. We have a situation here where one insured wants to transfer (and thus cancel) a policy from a Trans Am to a Corvette, and the other insured knows this and insists that the Corvette be covered. The impetus for the cancellation was from the two insureds, Graves and Lease Car. Lease Car argues that Graves went into the AAA office simply to do the necessary paperwork to transfer the Trans Am insurance

from Motorland ("a higher-priced AAA subsidiary") to AAA and that there was no cancellation. Lease Car claims that when Schroeder called to get the insurance transferred to the Corvette, Belfry simply changed the name of the car and cost of the insurance on the original application form. This may be true. But again the motivating cause was Lease Car's and Graves's desire to have the Corvette covered by this identical policy. Lease Car, Graves, and Schroeder all knew of the transfer and all knew that the Trans Am would, therefore, no longer be covered.

No matter what happened, it is still clear that Lease Car, Schroeder, Graves and DAIIE, and the Wests all understood that Graves was having her insurance on the Trans Am transferred to the Corvette as soon as the Corvette was available and before Schroeder could take possession of that automobile. Everyone knew that this transfer was at Schroeder's and Graves's request and that West was to get his own coverage on the Trans Am.

We find the cancellation effective, and the notice of no legal consequence. Since the cancellation was complete no notice could revive the contract. *Farmers Ins Exchange v Allstate Ins Co,* 143 F Supp 213 (ED Mich, 1956); *Wilbanks v Prudential Property & Casualty Ins Co,* 277 SC 256; 286 SE2d 127 (1982). There is some hint that Lease Car might claim equitable estoppel as a bar to DAIIE's using the cancellation of the contract as a defense. There are no facts made available in this Court to indicate that such a defense is possible.

If we expressed an opinion on DAIIE's claimed fraud defense against Lease Car or on Lease Car's claim of interest or on West's claim for no-fault benefits despite the running of the period of limitation, such an opinion would be dicta in light of our above findings.

The trial court's declaratory judgment that DAIIE was the primary insurer of the Trans Am on April 26, 1978, and that DAIIE was liable to West for no-fault benefits is reversed. We need not rule on the issue relative to interest or whether DAIIE is estopped from defending against the Wests on the basis of the statute of limitations or on the claim of fraud.

Reversed.