BLEKKENK v ALLSTATE INSURANCE COMPANY

Docket Nos. 83362, 83415. Submitted December 4, 1985, at Lansing. Decided May 21, 1986.

Scott A. Blekkenk went to the Boyer Agency and applied for no-fault automobile insurance from defendant, Allstate Insurance Company, on April 6, 1983. Blekkenk paid $40 and received a certificate of no-fault insurance with a stated expiration date of June 6, 1983. This certificate, or insurance binder, was a contract of temporary insurance pending issuance of a formal policy or proper rejection by Allstate. On April 12, 1983, the insurance agent, Jon Raatz, forwarded the insurance application to Allstate. On April 19, 1983, Blekkenk returned to the Boyer Agency and orally requested that Raatz cancel his insurance policy. Since Allstate had not yet issued a formal policy, Raatz did not have a policy number and, therefore, merely made a memorandum of Blekkenk's cancellation. After Blekkenk's policy arrived from Allstate, a secretary at the Boyer Agency prepared a cancellation request on an Allstate form, dated May 2, 1983. This form was sent to Allstate along with the policy, on May 4, 1983, and indicated that the cancellation was effective as of April 19, 1983. On May 7, 1983, Blekkenk was severely injured in an accident while driving the car for which he had orally cancelled the insurance. Allstate issued a check on May 10, 1983, refunding the unused portion of Blekkenk's down payment on his premium. Allstate contended that Blekkenk's oral cancellation was effective and, therefore, Blekkenk was without no-fault coverage at the time of the accident. Plaintiff, Shirley Mae Blekkenk, guardian of the person and conservator of the estate of Scott A. Blekkenk, thereafter brought an action in the Charlevoix Circuit Court seeking benefits under the insurance policy. The Michigan Attorney General and Department of Social Services were allowed to

REFERENCES

Am Jur 2d, Automobile Insurance §§ 5-11, 36-40.

Am Jur 2d, Insurance §§ 165-167, 406-414.

Cancellation of compulsory or "financial responsibility" automobile insurance. 44 ALR4th 13.

See also the annotations in the ALR3d/4th Quick Index under Automobile Insurance; Insurance; No-fault Insurance.

intervene as plaintiffs in order to assert the department's subrogation rights against Allstate for Mr. Blekkenk's medical expenses which were paid by the department through the Medicaid program. Motions for summary judgment were filed by the plaintiff, intervening plaintiffs and the defendant. The trial court, Richard M. Pajtas, J., agreed with defendant's contention that the policy cancellation was effective and therefore entered an order granting defendant's motion for a summary judgment and denying plaintiff's and intervening plaintiffs' motion for a summary judgment. Plaintiff and the intervening plaintiffs appeal therefrom. The appeals were consolidated by the Court of Appeals. *Held:*

1. Plaintiff's and intervening plaintiffs' reliance on MCL 500.3020; MSA 24.13020 is misplaced. Subsection (1)(a) of that statute does not require that the insurer demand and actually receive the policy in order for the cancellation to be effective. Subsection (1)(b) of the statute does not apply to cancellation by the insured but requires ten days' written notice only where cancellation is by the insurer. The warning statement which is to accompany the notice of cancellation, as provided in subsection (4) of the statute, is required only where the insurer cancels the policy.

2. The general rule that effective cancellation will require strict compliance with the cancellation clause of a policy will not be applied where its application does not serve its purpose of preserving the contract intended by the parties. The Court of Appeals has followed the well-established rule that cancellation may be by mutual agreement or consent.

3. MCL 500.3020(1)(a); MSA 24.13020(1)(a) prohibits a construction of Allstate's policy that would preclude oral cancellation by the insured as occurred in this case. The clear language of the statute is that the insured may cancel his policy at any time upon request. Had the Legislature intended to require that the insured submit written notice of cancellation, it would have clearly said so, as it provided in subsection (1)(b) for written notice of cancellation by the insurer. The Legislature having permitted an oral cancellation, Allstate may not prohibit it.

4. Surrender of the policy is not required under MCL 500.3020(1)(a); MSA 24.13020(1)(a) for cancellation of the policy. Allstate's imposition of such a restriction on Blekkenk's right to cancel the policy is in conflict with and must give way to the statutory provision.

5. Blekkenk's cancellation was in accord with MCL 500.3020(1)(a); MSA 24.13020(1)(a). The trial court correctly concluded that Blekkenk was without coverage and that Allstate was entitled to a summary judgment.

Affirmed.

1. INSURANCE — CONTRACTS — CANCELLATION OF POLICY — SURRENDER OF POLICY.

The statute regarding cancellation provisions in casualty insurance policies does not require the insured to surrender his policy to the insurer for cancellation to be effective; an insurer's imposition of such a restriction on an insured's right to cancel is in conflict with and must give way to the statutory provisions (MCL 500.3020[1][a]; MSA 24.13020[1][a]).

2. INSURANCE — CONTRACTS — CANCELLATION OF POLICY — NOTICE.

The section of the statute regarding cancellation provisions in casualty insurance policies which provides for ten days' written notice of cancellation does not apply to cancellation by the insured but requires ten days' written notice only where cancellation is by the insurer; similarly, the warning statement which must accompany a notice of cancellation is only required where the insurer cancels the policy (MCL 500.3020[1][a], [4]; MSA 24.13020[1][a], [4]).

3. INSURANCE — BINDERS.

The rights and liabilities of the parties pursuant to an insurance binder are determined by reference to the conditions of the policy expected to be issued.

4. INSURANCE — CONTRACTS — CANCELLATION OF POLICY.

The rights and obligations of parties to an insurance contract on termination thereof generally depend on the specific provisions of the policy; notice of cancellation of an insurance policy must be according to the provisions of the policy and be peremptory, explicit, and unconditional.

5. INSURANCE — CONTRACTS — CANCELLATION OF POLICY.

The general rule that effective cancellation of an insurance policy requires strict compliance with the policy's cancellation clause is designed to protect against unilateral cancellation of the policy by the insurer or the insured; the general rule will not be applied where its application does not serve its purpose of preserving the contract intended by the parties.

6. INSURANCE — CONTRACTS — CANCELLATION OF POLICY.

The Court of Appeals has followed the well-established rule that cancellation of an insurance policy may be by mutual agreement or consent; therefore, defective cancellation may be ratified and strict policy notice may be waived.

7. INSURANCE — CONTRACTS — JUDICIAL CONSTRUCTION.

Insurance laws and policies are to be liberally construed in favor of policyholders, creditors and the public.

8. Insurance — Contracts — Cancellation of Policy — Oral Notification.

> The statute regarding cancellation provisions in casualty insurance policies mandates that the policy contain a provision that the policy may be cancelled "at any time at the request of the insured"; the statute limits the insurer's ability to protect its premiums through restrictions on the insured's method of cancellation; the Legislature has permitted an oral cancellation by the insured and, therefore, a policy may not preclude oral cancellation by the insured (MCL 500.3020[1][a], [b]; MSA 24.13020[1][a], [b]).

*Edward M. Waud,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *James D. Clarke,* Assistant Attorney General, for the intervening plaintiffs.

*Bensinger, Combs & Cotant, P.C.* (by *Richard G. Bensinger*), for defendant.

Before: Cynar, P.J., and Wahls and Gribbs, JJ.

Wahls, J. The question in this appeal from the trial court's opinion and order granting defendant's motion for a summary judgment is whether Scott Blekkenk's oral cancellation of his insurance policy was an effective cancellation. In answering this question, we are called upon to determine Blekkenk's rights and obligations under MCL 500.3020; MSA 24.13020 and the insurance policy.

On April 6, 1983, Blekkenk went to the Boyer Agency and applied for no-fault automobile insurance from defendant, Allstate Insurance Company. Blekkenk paid $40 and received a certificate of no-fault insurance with a stated expiration date of June 6, 1983. This certificate, or insurance binder, was a contract of temporary insurance pending issuance of a formal policy or proper rejection by Allstate. See generally *State Automobile Mutual*

*Ins Co v Babcock,* 54 Mich App 194, 203-206; 220 NW2d 717 (1974). On April 12, 1983, Jon Raatz, the insurance agent who serviced Blekkenk, forwarded the insurance application to Allstate.

On April 19, 1983, Blekkenk returned to the Boyer Agency and orally requested that Raatz cancel his insurance policy. Because Allstate had not yet issued a formal policy, Raatz did not have a policy number and, therefore, merely made a memorandum of Blekkenk's cancellation. After Blekkenk's policy arrived from Allstate, a secretary at the Boyer Agency prepared a cancellation request on an Allstate form, dated May 2, 1983. This form was sent to Allstate along with the policy, on May 4, 1983, and indicated that the cancellation was effective as of April 19, 1983.

On May 7, 1983, Blekkenk was severely injured in an accident while driving the car for which he had orally cancelled the insurance. Allstate issued a check on May 10, 1983, refunding the unused portion of Blekkenk's down payment on his premium. Allstate contends that Blekkenk's oral cancellation was effective and, therefore, Blekkenk was without no-fault coverage at the time of the accident. The trial court agreed with Allstate and granted Allstate's motion for summary judgment based on that contention. Plaintiff, Shirley Mae Blekkenk, guardian of the person and conservator of the estate of Scott Blekkenk, appeals therefrom. Intervening plaintiffs, the Michigan Attorney General and Department of Social Services, also appeal therefrom. The appeals were consolidated by the Court of Appeals.

I

Appellants argue first that Blekkenk's cancellation was ineffective because it was not in conform-

ity with the applicable statute. Appellants contend that it was necessary for Blekkenk to return the insurance binder to Boyer Agency or Allstate and that Blekkenk was entitled to ten days' written notice of cancellation accompanied by a statement that he should not operate an uninsured vehicle.

MCL 500.3020; MSA 24.13020 provides in relevant part:

> (1) A policy of casualty insurance, except worker's compensation, including all classes of motor vehicle coverage, shall not be issued or delivered in this state by an insurer authorized to do business in this state for which a premium or advance assessment is charged, unless the policy contains the following provisions:
>
> (a) That the policy may be canceled at any time at the request of the insured, in which case the insurer shall, *upon demand and surrender of the policy,* refund the excess of paid premium or assessment above the customary short rates for the expired time.
>
> (b) That the policy may be canceled at any time by the insurer by mailing to the insured at the insured's address last known to the insurer or an authorized agent of the insurer, with postage fully prepaid, *a 10 days' written notice of cancellation* with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time. The excess, if not tendered, shall be refunded on demand and the notice of cancellation shall state that the excess premium, if not tendered, will be refunded on demand.
>
>                     * * *
>
> (4) A notice of cancellation, including a cancellation notice under section 3224, shall be accompanied by *a statement that the insured shall not operate or permit the operation of the vehicle to which notice of cancellation is applicable,* or operate any other vehicle, unless the vehicle is insured as required by law. [Emphasis added.]

We conclude that appellants' reliance on this statute is misplaced.

First, subsection (1)(a) does not require that the insurer demand and actually receive the policy in order for the cancellation to be effective. The clear import of the language is that, upon canceling his insurance, the insured may demand refund of the unused premium and the insurer is statutorily obligated to make the refund upon such demand and surrender of the policy.

Second, subsection (1)(b) does not apply to cancellation by the insured but requires ten days' written notice only where cancellation is by the insurer. *National Ben Franklin Ins Co of Michigan v West,* 136 Mich App 436, 448; 355 NW2d 922 (1984), lv den 422 Mich 852 (1985).

Third, the warning statement in subsection (4) is required only where the insurer cancels the policy. The warning statement must accompany a notice of cancellation, which, as we have noted above, is not required where the insured cancels the policy.

II

Appellants also argue that cancellation must be according to the provisions of the policy and that such provisions may not be waived, even by "mutual agreement" of the parties.

In this case, the Allstate policy stated as a general condition:

> The named insured may cancel this policy by mailing to Allstate written notice stating when thereafter such cancellation shall be effective, or by surrender of the policy to Allstate or any of its authorized agents and, if so, the cancellation shall be effective at the time of surrender.

Another general condition of the policy provided:

The terms of this policy may not be waived or changed by notice to or knowledge possessed by any agent or other person, but, subject to Condition 6, only by policy endorsement. Such terms of this policy as are in conflict with statutes of the state in which this policy is issued are hereby amended to conform.

These provisions are relevant because the rights and liabilities of the parties pursuant to the insurance binder are determined by reference to the conditions of the policy expected to be issued. *State Automobile Mutual Ins Co v Babcock, supra,* 54 Mich App 205.

"Generally speaking, the rights and obligations of parties to an insurance contract on termination thereof depend on the specific provisions of the policy." *VanZanten v National Casualty Co,* 333 Mich 28, 43; 52 NW2d 581 (1952). "Notice of cancellation of an insurance policy must be according to the provisions of the policy and be peremptory, explicit, and unconditional." *Beaumont v Commercial Casualty Ins Co,* 245 Mich 104, 106-107; 222 NW 100 (1928). There is old authority for appellants' position that strict compliance with the policy provisions is essential.

In *Schroeder v Farmers' Mutual Fire Ins Co,* 87 Mich 310; 49 NW 536 (1891), plaintiff had paid up his dues and assessments and directed the insurer's secretary to take his name off the books, as he wished to withdraw. The secretary made an entry: "Withdrawn, Nov. 21, 1889; policy not returned." Plaintiff's house was destroyed by fire on January 20, 1890, and plaintiff sought benefits from the insurance company. The company contended that plaintiff had withdrawn, notwithstanding noncompliance with the following provision of the company's charter:

> Any member may, at any time, withdrawn therefrom by returning his or her policy or policies to the secretary, and by paying all assessments made, or liable to be made, for previous losses and debts, and claims then due, or liable to become due, from such member to the company.

Following a trial, the jury returned a verdict for defendant and plaintiff appealed. The Supreme Court concluded:

> The court in its charge seems to have understood the right of the company to require the surrender of the policy before the withdrawal became operative and effective, so far as the rights of the company are concerned, and yet he directed the jury that the withdrawal became complete, if the secretary and the plaintiff so understood it, though the policy was not surrendered. In this the court was in error. There was no such act done as required by the charter in order to withdraw from the company, and, had a fire occurred by which other members met with losses, the plaintiff could have been held liable to an assessment for his proportionate share of such losses. This obligation still resting upon the plaintiff, the defendant company must be held equally bound, under the circumstances, to pay the plaintiff's loss. [87 Mich 313.]

Interestingly, the Court then fell back on an alternative ground for reversal, assuming the trial court's theory was correct. One justice dissented from that part of the majority's opinion which held that surrender of the policy was essential to withdrawal.

A scenario similar to that envisioned by the *Schroeder* Court was addressed in *Nichol v Murphy,* 145 Mich 424; 108 NW 704 (1906). There the defendant applied for fire insurance on November 14, 1896, and was issued a policy for a term of

three years. About one year later, defendant sought to withdraw and surrendered his policy with his request to a local agent. He did not, however, pay his pro rata share of the as yet unassessed premium. While defendant clearly believed that he had withdrawn, and the local agent probably believed likewise, the home company did not receive notice of the withdrawal, and its receiver upon dissolution sued defendant for the assessments owed for the final two years of the policy term. A unanimous Supreme Court concluded that defendant's cancellation was ineffective, citing *Schroeder, supra,* and other cases.

In Anno: *Construction, application, and effect of clause that liability insurance policy may be canceled by insured by mailing to insurer written notice stating when thereafter such cancellation shall be effective,* 11 ALR4th 456, 458, the annotator concluded that "the general rule seems to be that an effective cancellation will require strict compliance with the cancellation clause." The annotator reviewed two cases from other jurisdictions in which oral statements were found ineffective where written notice of cancellation was required.

The general rule of strict compliance recognizes that both the insured and the insurer have their respective rights and interests in the policy. The rule is designed to protect against a unilateral cancellation by the insurer, depriving the insured of expected coverage, or by the insured, depriving the insurer of expected profits from the premiums. However, the general rule will not be applied where its application does not serve its purpose of preserving the contract intended by the parties.

Thus, in *Beaumont v Commercial Casualty Ins Co, supra,* 245 Mich 107, the Supreme Court stated that defective cancellation may be ratified and strict policy notice may be waived. An example of

waiver is provided in *Hillock v Traders Ins Co,* 54 Mich 531; 20 NW 571 (1884). In *Hillock,* the agent notified the insured that the policy was canceled and requested surrender of the policy. The insured did not return the policy, believing that he did not have it, and asked the agent to procure other insurance. No premium refund was made, although the policy provided for termination by the company "on refunding a ratable proportion of the premium for the unexpired term of the policy." In the absence of a contractual provision conditioning cancellation on surrender of the policy, the Surpreme Court concluded that the failure to return the policy was unimportant, although it was some evidence on the question of cancellation. The Court further concluded that the insured's direction to the agent to procure other insurance, "which must have been upon the understanding that he would use the premium money for the purpose, was a waiver of any tender of its return to him." 54 Mich 538. "All such transactions," the Court stated, "are to be construed reasonably and fairly, and in accord with the evident understanding of the parties at the time." *Id.*

In Anno: *Obtaining new property insurance as cancellation of existing insurance,* 14 ALR4th 781, 783, the annotator states,

> The method of cancellation provided for in an insurance policy is not necessarily exclusive so as to preclude an effective cancellation of the policy by mutual agreement without compliance with the procedure so provided. Thus, it is well established that a policy of insurance may be canceled at any time before loss, by an agreement between the parties, and that such cancellation may be by the consent of the parties, express or implied from the circumstances, independently of the terms of the policy. On the other hand, it is equally true that in

the absence of fraud or misrepresentation, neither party to an insurance contract can withdraw therefrom, or cancel it without the consent, express or implied, of the other.[3]

---

[3] See, generally, 43 Am Jur 2d, Insurance §§ 431, 432.

---

Citing the same encyclopedic source as the annotation, this Court has followed the "well-established" rule that cancellation may be by mutual agreement or consent. *American & Foreign Ins Co v Allied Plumbing & Heating Co,* 36 Mich App 561, 568; 194 NW2d 158 (1971). See also *Auto-Owners Ins Co v Southern Michigan Mutual Ins Co,* 123 Mich App 39, 44, n 6; 333 NW2d 168 (1983) (noted that holding did not preclude company from raising defense of cancellation by mutual consent), *National Ben Franklin Ins Co of Michigan v West, supra,* 136 Mich App 448-449 (regardless of what happened, it was clear that all parties understood the policy was canceled, so the cancellation was effective).

We turn now to the specific facts of this case and, for the sake of clarity, restate the relevant provisions of the insurance policy. General Condition 10, governing cancellation, provided in part:

> The named insured may cancel this policy by mailing to Allstate written notice stating when thereafter such cancellation shall be effective, or by surrender of the policy to Allstate or any of its authorized agents and, if so, the cancellation shall be effective at the time of surrender.

General Condition 5, governing changes, provided:

> The terms of this policy may not be waived or changed by notice to or knowledge possessed by any agent or other person, but, subject to Condi-

tion 6, only by policy endorsement. Such terms of
this policy as are in conflict with statutes of the
state in which this policy is issued are hereby
amended to conform.

Allstate argues that the condition for cancella-
tion is inapplicable in this case because no policy
had been issued to Blekkenk when he sought to
cancel coverage and, therefore, he could not sur-
render the policy. Appellants contend that, during
the period before the formal policy is delivered,
the condition for cancellation must be construed as
requiring surrender of the insurance binder.

Allstate also argues that the conditions for can-
cellation are not mandatory because the word
"may" is used without a further provision that
cancellation may *only* be by written request or by
surrender of the policy. Because the condition for
cancellation is designed to aid the insurer, Allstate
argues that the insurer may accommodate the
insured by waiving the requirements of written
notice or of surrender. Appellants, of course, view
the condition as mandatory and reject the possibil-
ity of waiver in light of General Condition 5,
which prohibits waiver of policy terms except by
policy endorsement.

Underlying the parties' respective arguments
are two different fundamental points of view. Ap-
pellants proceed upon the well-established princi-
ple that insurance laws, and policies, are to be
liberally construed in favor of policyholders, credi-
tors and the public. See *Dearborn National Ins Co
v Comm'r of Ins,* 329 Mich 107, 118; 44 NW2d 892
(1950). Allstate's argument, at its most basic level,
relies on the fact that Blekkenk, Boyer Agency
and Allstate itself all understood the policy to be
canceled. Resolution of the issue in this case re-
quires that we take into account both of these

perspectives. However, in doing so, our analysis takes a somewhat different course then that presented by the parties.

> It is the established law in this State that surety contracts, entered into in an attempt to comply with statutory requirements, are read in the light of such statutory requirements and the terms of such contracts are construed to comply with the statutory requirements. The statute is read into the contract. *Oakland County v Central West Casualty Co,* 266 Mich 438; 254 NW 158 (1934). The same rules of construction apply to suretyship contracts and to insurance policies. *City of Detroit, for use of Watson v Blue Ribbon Auto Drivers' Ass'n,* 254 Mich 263; 237 NW 61; 74 ALR 1306 (1931). Insurance contracts are subject to statutory regulation. They should be construed in the light of statutory requirements, and mandatory statutory provisions should be read into such insurance contracts. [*Galkin v Lincoln Mutual Casualty Co,* 279 Mich 327, 331; 272 NW 694 (1937).]

MCL 500.3020(1)(a); MSA 24.13020(1)(a), governing cancellation by the insured, mandates that the policy contain a provision that the policy may be canceled "at any time at the request of the insured." We think that this statute prohibits a construction of Allstate's policy that would preclude oral cancellation by the insured as occurred in this case. Accordingly, we need not consider whether the arguments as presented by Allstate would independently require the conclusion that General Condition 10 permits oral cancellation without return of the insurance binder and/or policy.

As is evident from the cases of *Schroeder* and *Nichol,* discussed earlier in this opinion, policyholders share an interest not only in having coverage but also in avoiding unneeded or unwanted

premiums and coverage. Clearly, insurance policies have typically required more than a simple oral cancellation by the insured and this, in conjunction with the rule of strict compliance, has worked to favor the insured's interest in coverage. Yet we have not found in the case law that a public policy has been identified mandating a certain level of protection in favor of coverage and thus limiting the insured's freedom to contract; rather, the courts have relied on the parties' agreements. However, we believe that the present statute limits the insurer's ability to protect its premiums through restrictions on the insured's method of cancellation. While this may mean that a person will not be covered in a situation where coverage would have been found pursuant to *Schroeder* or *Nichol,* it is not for us to review the wisdom of the legislation.

The clear language of subsection (1)(a) provides that the insured may cancel his policy at any time upon request. In contrast, subsection (1)(b) provides for written notice of cancellation by the insurer. We conclude that, had the Legislature intended to require that the insured submit a written notice, it would have clearly said so. The Legislature having permitted an oral cancellation, Allstate may not prohibit it. *Galkin, supra,* and see General Condition 5 of the Allstate policy.

Subsection (1)(a) also states that "the policy may be canceled . . ., in which case the insurer shall, upon demand and surrender of the policy, refund the excess." In this provision, surrender of the policy is tied to the refund and obviously assumes that cancellation has already occurred. Accordingly, to give effect to all of the words, it must be concluded that surrender of the policy is not required for cancellation. Allstate's imposition of such a restriction on Blekkenk's right to cancel is

in conflict with and must give way to the statutory provision.

Blekkenk's cancellation was in accord with MCL 500.3020(1)(a); MSA 24.13020(1)(a). That he intended to cancel and that Allstate's agent accepted his cancellation are without dispute. Jon Raatz, whose testimony was accepted by all the parties for purposes of the proceedings thus far, testified that the cancellation occurred as follows:

> [H]e came into the office. And he said, "Mr. Raatz, I need to cancel the insurance on my Gremlin." I know this isn't the exact wording, but it went along that line. And I asked him why. And he said that it was broken down. It wouldn't be running and it would be several months. It'd be a long time, maybe as long as June, before he got his car running. I made some small talk with him. And said if it was only going to be a couple weeks don't cancel the insurance. And I kidded him about getting it—I remember I kidded him about Murphy's Law saying, "You'll probably get the car running on Sunday, and then you won't be able to drive because you have no insurance." And he said, "Oh, no. That wouldn't happen. Just cancel the policy." I said, "Fine. We'll do it for you. And when you get it running, come back and see me."

The facts being undisputed, the trial court correctly concluded as a matter of law that Blekkenk was without coverage, and that Allstate was entitled to summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10).

Affirmed.